A91A1442. PAUL DAVIS SYSTEMS OF SAVANNAH, INC.
v. PETH.
(412 SE2d 279)

BEASLEY, Judge.

Peth's house was damaged by fire. He contracted with Paul Davis Systems for repair. Alleging that the repair work was not performed satisfactorily according to contract, Peth sued Davis. The only cause of action was breach of contract, and the jury returned a verdict in favor of plaintiff.

The parties' contract was composed of a work authorization and an itemized estimate of the cost to repair the fire damage, plus a change order for designer solarium flooring instead of vinyl. The estimate consists of a computer printout describing the repairs to be made in the rooms of the house and to the roof and several miscellaneous items, including electrical work and plumbing. The repairs are divided into categories such as ceilings, walls, windows, floors, doors, roof. Within each category, the work to be done is itemized and calculated according to units, price per unit, and extension (total price per item). The total estimate of the cost of repairs is $48,922.82, which was increased by the change order of $748.

Plaintiff sought a recovery of $45,000 plus other damages which were eliminated at trial, and defendant filed a counterclaim for the unpaid balance due of $4,670.83. The verdict and judgment were $40,000 on the claim and zero on the counterclaim.

Plaintiff's expert witnesses included a county building inspector (Davis), a consulting engineer (Kern), and a home improvement contractor (Daily). Their opinions, individually or collectively, were that the roof was not structurally sound; that there were many humps or waves in it; that it had not been framed properly; that rafters had not been installed properly; and that the correction of these problems would necessitate the removal and reconstruction of the roof. They also testified as to extensive problems with the sheetrock in the walls and on the ceilings and that substantial portions of the sheetrock would have to be either removed and repaired or entirely replaced. They also testified that wallpaper had not been hung properly and that attic insulation had not been installed properly.

A home videotape, taken by plaintiff's wife after Davis was

stopped from proceeding, was played before the jury over objection. Plaintiff's wife described by testimony what was being depicted. She pointed out such things as doors, windows, and carpeting which she testified had been installed improperly or not at all, unrepaired cabinets, and areas of uneven and missing and peeling wallpaper. In addition, she testified about items in defendant's estimate which had been done improperly or not at all.

Daily estimated that the total cost to remedy would be $53,750. His itemized proposal contains 19 items, e.g., tear off and rebuild roof, tear out and redo sheetrock, clean and re-paint all walls and ceilings. It does not apportion the amount proposed for each item. An item not included in defendant's contract was removal of the fire-damaged roofing and sheetrock, which had been done before defendant commenced work.

Defendant moved for jnov or new trial, contending that the verdict is contrary to law and to the evidence, without evidence to support it, contrary to principles of justice and equity, and excessive in amount. Defendant also contended that the court erred in allowing the videotape presentation. The court denied the motion in an explanatory order, ruling that there was "ample evidence" to support the verdict. The appeal incorporates the foregoing contentions into a single enumeration of error.

1. Defendant argues that he contracted to provide only certain remodeling and repairs to an older residence which had been partially destroyed by fire, and there was no correlation between the testimony of plaintiff's witnesses as to the items in the house in need of repair and the items which defendant was contractually obligated to repair, since the witnesses had not reviewed the parties' contract and because testimony included items not covered by the contract.

Although plaintiff's witnesses had not reviewed the parties' contract, Daily testified that he compiled his proposal based on his inspection of the residence and plaintiff's statements to him as to the repair work defendant had contracted to do. Defendant's repair estimate and Daily's proposal were admitted in evidence; these documents show that the jury could have found that the items in the proposal represented repair work necessitated by defendant's improper repairs. Daily and all witnesses were subject to cross-examination to ferret out any items in their testimony which in defendant's view were not covered by the contract, which was in evidence.

As to damages, "[a] jury must be able to calculate the amount of damages from the data furnished and it cannot be placed in a position where an allowance of loss is based on guesswork. [Cit.] A jury must be able to calculate loss with a reasonable certainty. [Cit.] The party claiming damages carries not only the burden of proving the damages, but also furnishing the jury with sufficient data to estimate

the damages with reasonable certainty. 'It is not necessary, however, that the party on whom the burden thus rests should submit exact figures.' [Cit.]" *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 740 (6) (320 SE2d 863) (1984); also see *Pool Markets South v. Coggins*, 195 Ga. App. 50, 51-52 (3, 4) (392 SE2d 552) (1990); *Doughty v. Simpson*, 190 Ga. App. 718, 722 (3) (380 SE2d 57) (1989). "Generally, the proper measure of damages for defective workmanship would be the cost of repair of the defect. [Cits.]" *Adamson Co. v. Owens-Illinois Dev. Corp.*, 168 Ga. App. 654, 657 (309 SE2d 913) (1983). This principle was expressly applied, correctly, by the trial court. There was sufficient data to determine the damages with reasonable certainty. See generally *Pool Markets*, supra; *Palmer v. Howse*, 133 Ga. App. 619, 620 (1) (212 SE2d 2) (1974); OCGA § 13-6-2.

2. Citing *Ideal Pool Corp. v. Hipp*, 187 Ga. App. 273 (1) (370 SE2d 32) (1988), defendant argues that the verdict is excessive in that plaintiff has had the use of the residence both during and after defendant's contract performance, and he has thus been unjustly enriched. The alternate measure of damages appropriate there, where the defect was not remediable at a reasonable price, was diminution in value as constructed when compared with value had the contract been properly performed. That yardstick does not apply in this case because the deficiencies were remediable. The court charged OCGA § 13-6-2 and cost to cure, and defendant took no exception.

The cost of redoing the repairs included additional charges for such things as the removal of roofing, sheetrock, and wallpaper improperly installed. According to the usual course of things, this could be expected. Cf. *Palmer*, supra, involving consequential damages to a house caused by improper construction. "[T]he measure of damages includes all items that 'arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach.' OCGA § 13-6-2. . . ." *Adamson*, supra.

"The question of damages being one for the jury, a reviewing court should not interfere unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." OCGA § 13-6-4; *Pool Markets*, supra.

3. Construing the evidence in a light most favorable to the verdict, *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 159 (1C) (256 SE2d 916) (1979), the trial court did not err in refusing to grant defendant's motion for new trial on the evidentiary grounds asserted.

4. Defendant argues that the videotape was not correlated to work performed by defendant, was of such extreme poor quality and coloration that it was not an accurate representation of what it sought to depict, and was inflammatory, thereby leaving an indelible mental

impression in the minds of the jurors.

"Georgia follows a liberal policy in the admission of photographic evidence. [Cit.] Whether, under the evidence, the photograph or movie tape is a fair and accurate representation of the scene sought to be depicted addresses itself to the discretion of the trial judge which will not be controlled unless abused. [Cits.] . . ." *Eiland v. State*, 130 Ga. App. 428, 429 (1) (203 SE2d 619) (1973). The videotape as a whole showed the areas of work covered by the contract, it was taken at a time relevant to the issues, and its quality and color were not so bad as to make it misleading or otherwise inadmissible as a matter of law. The witness, who took it and explained it and the circumstances in which it was taken, was subject to cross-examination. It was not necessary that she correlate the scene to the particular terms of the contract, as the body of evidence connected it up. Contrary to the videotape in *Keith v. State*, 186 Ga. App. 273, 274 (2) (367 SE2d 255) (1988), the evidence in this case was "a fair and accurate representation of the scene sought to be depicted" despite its shortcomings. Defendant has not shown an abuse of discretion here.

*Judgment affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED NOVEMBER 4, 1991.

*Remler, Koski & Near, Albert N. Remler*, for appellant.
*Duffy & Feemster, Dwight T. Feemster, Jo Beth Gosdeck*, for appellee.