A93A1155. MILLER v. CHARLES.
(439 SE2d 88)

SMITH, Judge.

We granted this interlocutory appeal from the denial of a putative father's motion for summary judgment in a paternity action.

The facts are not in dispute. On June 24, 1991, Debra June Charles brought suit in Lanier County against Terry Miller for determination of paternity and support of her minor child. Miller answered, denying paternity and requesting blood testing. The test results suggested a 12,672 to 1 (99.99 percent) probability that Miller is the biological father of the child. A temporary consent order was then entered requiring Miller to pay child support. Miller then amended his answer to admit paternity and filed a counterclaim seeking custody. In his counterclaim, he asserted, among other things, that Charles was not a fit or proper person to have custody.

Soon thereafter Miller learned of an action in the Superior Court of Clinch County in which the Department of Human Resources ("DHR") had been the petitioner on behalf of the same child. A consent order had been entered in that action on October 5, 1989, in which one Calvin Glaze did "acknowledge and recognize" himself to be the father of the child in question. Miller then moved the court to vacate the temporary consent order in the present case and for summary judgment, relying on a plea of res judicata. His motion was denied.

The sole question raised in this appeal is whether the previous

adjudication acts as a bar to this action against Miller under principles of res judicata or collateral estoppel. We conclude that it does not, and we affirm.

The principle of res judicata is codified in OCGA § 9-12-40, which provides: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." In deciding whether OCGA § 9-12-40 operates to bar a claim, we must consider: "(a) whether there is a valid antecedent judgment; (b) whether there is identity of parties; (c) whether there is identity of issues; and (d) whether reasons of public policy militate against a strict application of the above statute in this case." *Fierer v. Ashe*, 147 Ga. App. 446, 448 (249 SE2d 270) (1978). The doctrine of collateral estoppel, also known as estoppel by judgment, is similar, but not identical. "Generally, res judicata bars relitigation of any matter of a cause of action that was, or could have been, put in issue and adjudicated in a prior proceeding between the same parties, while estoppel by judgment prevents relitigation in a subsequent suit (involving a different cause of action) a matter which was actually adjudicated in a former case. [Cits.] Neither defense, however, is available unless the subsequent suit is between the same parties or their privies. [Cits.]" *Blackburn v. Blackburn*, 168 Ga. App. 66, 72 (2) (308 SE2d 193) (1983).

1. "Privies are all persons who are represented by the parties and claim under them, all who are in privity with the parties; the term privity denotes mutual or successive relationship to the same rights of property." (Citations and punctuation omitted.) *Fleeman v. Dept. of Human Resources*, 208 Ga. App. 97, 98 (430 SE2d 135) (1993). DHR initiated the prior action against Glaze. The complaint in the prior action, which is included in the record in this appeal, reveals that Charles accepted public assistance pursuant to OCGA § 19-11-5. Pursuant to OCGA § 19-11-6 (a), therefore, she is deemed to have assigned to DHR her right to child support, and DHR was subrogated to the rights of Charles and the child to recover any child support payments ordered by the courts of this or any other state. Although Charles and the child certainly benefitted from the prior action, DHR was subrogated only to Charles's and the child's right to support. OCGA § 19-11-7 (c). DHR's sole interest in the action was to recover the sums it had expended in behalf of the child, and we look no further than OCGA § 19-7-49 (a) to determine the gist of its cause of action against Glaze: "The sole effect of the order [in the prior action designating Glaze as the father] shall be to establish the duty of the father to support the child."

The State's interest, however, although certainly legitimate and

essential, does not fully "represent" the interest of either Charles or the child, and that interest is not co-extensive or fully congruent with either their interests or their purpose in seeking a determination of paternity. Even apart from the important emotional and human interest involved in a recognition of parenthood, significant rights and duties other than support flow from an order determining paternity and devolve upon both father and child. For instance, such a determination may entitle a child born out of wedlock to inherit from or through his father or any paternal kin, OCGA § 53-4-4 (c) (1) (B), and vice versa. OCGA § 53-4-5 (b) (1) (B). Mothers' and children's interests in these rights were not, and could not have been, litigated by DHR. OCGA § 19-7-49 (a). We hold, therefore, that neither Charles nor the child was a "privy" of DHR in the prior litigation. It is undisputed that Miller was a stranger to the prior action. It follows that the prior adjudication may not be used as a bar to the present action.

2. This result harmonizes *Macuch v. Pettey*, 170 Ga. App. 467 (317 SE2d 262) (1984), relied upon by Miller, with *McGuire v. Witcher*, 201 Ga. App. 685 (411 SE2d 875) (1991), cited by Charles. In *Macuch*, the trial court properly barred a mother from relitigating the issue of the paternity of her child in an action filed after obtaining custody and support for the child, who was born during the marriage, in a divorce action. The mother was clearly a party to the previous action. In *McGuire*, the mother was not a party to the prior action, an abandonment action brought by the State against one Johnson, and both the trial court and this court found no preclusive effect.

3. Finally, "reasons of public policy militate against a strict application of [OCGA § 9-12-40] in this case." *Fierer*, supra. Those reasons were also touched upon in *McGuire*. There, Johnson had been named by the mother of an illegitimate child in an abandonment warrant. Johnson entered a plea of guilty in the prosecution. Subsequent blood testing excluded Johnson as the father of the child, but the abandonment conviction was never vacated. In a subsequent civil paternity action brought by the mother against McGuire, McGuire raised Johnson's earlier conviction as a bar. However, blood test evidence excluded Johnson and did not exclude McGuire as the father of the child. The trial court ruled that the prior abandonment conviction did not bar entry of an order finding that McGuire was the father of the child, and this court affirmed.

The stated rationale in *McGuire* was based in part on the fact that the prior adjudication was a criminal prosecution, in which "the rules as to the competency of witnesses and the weight of evidence required for a finding are different. [Cit.]" Id. at 686. However, a prior *criminal* adjudication would actually militate in *favor* of the application of res judicata, the standard of proof in criminal actions be-

ing higher than that in civil actions and paternity presumably having been proved beyond a reasonable doubt. The remainder of the stated rationale in *McGuire* defers to an important public policy, and applies to this case as well. Although "there can only be one biological father for any one child, [and] the law should not allow the possibility for inconsistent paternity adjudications[,] . . . giving the first adjudication preclusive effect would perpetuate, rather than eliminate any inconsistency present. Adjudications of paternity must be supported by evidence to the trier of fact and any prior adjudications that do not have preclusive effect can be used by the trier of fact for their evidentiary value in the effort to arrive at the truth in a paternity action." Id. We recognize, as did the court in *McGuire*, the possibility for abuse in permitting inconsistent paternity adjudications regarding the same child. However, "[t]he object of all legal investigation is the discovery of truth." OCGA § 24-1-2. Biological evidence points overwhelmingly toward Miller as the father of the child, and here, as in *McGuire*, giving the adjudication against Glaze preclusive effect would perpetuate not simply an inconsistency, but more probably, a falsehood and an injustice.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DENIED DECEMBER 15, 1993 — 

*Griner & Mirate, Galen A. Mirate*, for appellant.
*Kitchens, Wolfson, Smith & Hannan, James R. Smith, Jr.*, for appellee.