A95A2259. SHILLIDAY et al. v. DUNAWAY.
(469 SE2d 485)

SMITH, Judge.

Robert and Linda Shilliday brought this action against Kimberly Dunaway after the vehicle Dunaway was driving struck Robert Shilliday as he was walking on Courtland Street in downtown Atlanta on April 10, 1991. The case was tried before a jury, which returned a verdict in favor of Dunaway. The Shillidays moved for new trial and to set aside the judgment. The trial court denied their motions, and they appeal.

1. Pursuant to OCGA § 9-11-60 (d), the Shillidays contend the judgment should be set aside because of fraud. This contention centers around the introduction of a photograph purportedly representing the accident scene. Near the end of the trial, Dunaway introduced a photograph as her only documentary evidence. She identified the photograph as showing skid marks left by her automobile after she applied her brakes. Over objection, the photograph was admitted.

On motion for new trial, counsel for the Shillidays stated that she was not shown the photograph "until in the courtroom during or just before the trial, not long before [Dunaway's counsel] offered it into evidence."[1]

The Shillidays contend on appeal, as they did below on motion for new trial, that the photograph was fraudulently obtained and was not shown to their trial counsel and that the judgment therefore should be set aside. The trial court conducted an evidentiary hearing on the motion for new trial. At the hearing, Marcel Reed, a crime technician for the Atlanta Police Department, testified he was contacted by Lieutenant J. T. Warren (Dunaway's uncle) at approximately 2:30 a.m. on April 11, 1991, and was instructed to take photographs in the vicinity of Courtland Street and Ralph McGill Boulevard. Warren directed Reed where to take photographs and provided the name "Kimberly Kimbrough" as the victim of the collision scene. A report filed by Reed at Warren's direction cited "Kimberly Kimbrough" as the subject. The report indicated that the investigator of the collision was "Lt. Warren" and bore the handwritten notation on it "Print for Lt. Warren." Further, a photograph release form indicated that photographs from the file were signed for by Lt. Warren.

OCGA § 9-11-60 (d) (2) provides that a motion to set aside a judgment may be brought based on "[f]raud, accident, or mistake or the acts of the adverse party *unmixed with the negligence or fault of the movant.*" (Emphasis supplied.) We are disturbed that the photograph apparently *was* placed in police files under a fictitious name at the direction of Lt. Warren. Such conduct by one in whom the public places its trust is utterly reprehensible. Despite our concerns, though, we are constrained to affirm the decision of the trial court. The trial court found that no "smoking gun" linked Dunaway to her uncle's actions. The record supports this finding. We find no evidence that Dunaway had knowledge that Warren planned to have the photographs taken or asked him to take the photographs. Further, it does not appear from the record that Dunaway had any knowledge that the photographs were placed in police files under a fictitious name or that any wrongdoing occurred.

We are bound by the language of *Bagwell v. Parker*, 182 Ga. App. 313, 315 (355 SE2d 463) (1987): "One who has obtained a judgment at law according to the prescribed method, and who is not chargeable with any conduct which would amount to fraud or imposition upon the adverse party in relation to the judgment, will not be interfered with by a court of equity for the mere reason that a stranger perpe-

---

[1] Counsel also stated that she objected below on the ground that the photo was not properly authenticated and also that she objected to markings on the backside of the photograph as being "rank hearsay." These objections do not appear in the transcript, however.

trated a fraud which prevented the other party to the judgment from interposing a defense. *The remedy of the party who is the victim of such fraud at the hand of a stranger to the plaintiff is not by resort to a court of equity to have the judgment set aside, but by seeking proper redress against him who perpetrated the fraud.*" (Citations and punctuation omitted; emphasis in original.) Because the record supports the trial court's finding that the evidence did not show that Dunaway was linked to her uncle's actions, we must affirm the denial of the motion to set aside.[2]

Further, the record supports the trial court's finding that counsel for the Shillidays failed to exercise "due diligence" in obtaining the photograph. The pre-trial order entered several months before the trial recited that Dunaway's exhibits included "photographs of the area where the incident occurred." Trial counsel for the Shillidays stated below that Dunaway's counsel told her he had given her "everything on his exhibit list." That contention is not dispositive, however. At the hearing on the motion for new trial, Dunaway's counsel stated that the Shillidays' counsel did not ask for photographs listed on the pre-trial order. The trial court sat as the finder of fact and was authorized to find that counsel for the Shillidays did not ask to see the exhibits listed on the pre-trial order and that she failed to exercise the required ordinary diligence. See generally *Morgan v. Morgan*, 193 Ga. App. 302, 304-305 (5) (388 SE2d 2) (1989). Some evidence was presented that the alleged fraud was *not* unmixed with the negligence of the Shillidays's counsel. See OCGA § 9-11-60 (d) (2). Because the record supports the trial court's ruling that no "smoking gun" linked Dunaway to Lt. Warren's actions and that the Shillidays's counsel failed to exercise due diligence in obtaining the photograph, we affirm.

2. The Shillidays also contend the trial court erroneously denied their motion for new trial based on newly discovered evidence. We disagree. One seeking a new trial on the ground of newly discovered evidence must meet six well-established requirements, one being that the failure to acquire the evidence earlier was not caused by the lack of due diligence. See *Cantrell v. Red Wing Rollerway*, 184 Ga. App. 506, 508 (1) (361 SE2d 720) (1987). As held in Division 1, the record supports the trial court's finding that the Shillidays' counsel failed to exercise due diligence in obtaining the photograph. Because all six requirements must be met, the trial court's denial of the motion may be affirmed on this ground alone. See *Leventhal v. Seiter*, 208 Ga. App.

---

[2] Though Lt. Warren may not have been a "stranger" to Dunaway in the common use of the word, he was a "stranger" to the litigation in the legal sense. See, e.g., *Miller v. Charles*, 211 Ga. App. 386, 388 (1) (439 SE2d 88) (1993) (biological father of child nevertheless "stranger" to earlier paternity litigation where not a party).

158, 161 (1) (430 SE2d 378) (1993).

3. The Shillidays contend on appeal that the photograph should not have been admitted because it was not properly authenticated. Counsel for the Shillidays, however, did not object on this ground to its admission at trial; she merely stated, "I object," and renewed the objection after voir dire of Kimberly Dunaway. She cannot now complain that her objection was overruled and that the evidence was admitted. See generally *James v. Tyler*, 215 Ga. App. 479, 482 (5) (451 SE2d 506) (1994). Moreover, authentication of a photograph requires only a showing that it fairly and truthfully represents what it purports to depict. See *Paul Davis Systems &c. v. Peth*, 201 Ga. App. 734, 737 (4) (412 SE2d 279) (1991). Dunaway's testimony satisfied this requirement; she agreed that the photograph depicted the skid marks left by her car on the date of the accident. The trial court did not abuse its discretion in admitting the photograph.

4. The Shillidays contend the trial court erroneously refused to charge the jury on the doctrine of last clear chance. "The last clear chance doctrine simply has no application unless the defendant knew of the plaintiff's perilous situation and had opportunity to take proper evasive action to avoid injuring him. It does not apply to a 'should know' or 'should have known' situation." (Citations and punctuation omitted.) *Steiner v. Melvin*, 143 Ga. App. 97, 99 (3) (237 SE2d 635) (1977). We agree with the trial court that no evidence was presented showing Dunaway had time to take evasive action to avoid the accident. The trial court did not err in refusing to give the requested charge.

5. The Shillidays complain of the trial court's failure to charge OCGA § 40-6-92 (a). In its order denying the Shillidays' motion for new trial, the trial court found that the request was not submitted in writing and that any ground for appeal was thus waived. The Shillidays contend that during the charge conference, the trial court stated it did not need the charge in writing to preserve the objection.[3] Their contention is misleading. The trial court said nothing about preserving an objection but merely denied the request to charge. "It is never error to deny an oral request to charge." (Citation and punctuation omitted.) *Slaughter v. Linder*, 122 Ga. App. 144, 146 (2) (a) (176 SE2d 450) (1970). That the *trial court* did not need a written request in order to deny the charge did not absolve trial counsel from filing a written request for *this Court's* review. OCGA § 5-5-24 (b) mandates that charges be written. Because no written request to charge on

---

[3] The colloquy regarding the charge follows: Trial counsel for the Shillidays: "I'll except to you not giving OCGA § 40-6-92 (a)"; The Court: "The one that you have not otherwise submitted in writing?" Counsel: "Right. I mean, if that's all you need I can get it submitted in writing." The Court: "I don't need anything."

OCGA § 40-6-92 (a) appears in the record, the trial court did not err in refusing to give such a charge.

6. The Shillidays contend the trial court erroneously charged OCGA § 40-6-92 (c), requested by Dunaway. At trial, however, counsel for the Shillidays acquiesced in the charge provided her request was given concerning the definition of an intersection. The court agreed to charge the jury on this issue as requested by the Shillidays' counsel. The Shillidays cannot complain on appeal about a consequence of their own behavior. "One cannot complain of a judgment, order, or ruling that his own procedure or conduct aided in causing." (Citation and punctuation omitted.) *Stephenson v. Wildwood Farms*, 194 Ga. App. 728, 729 (391 SE2d 706) (1990). The trial court did not err in giving the requested charge.

7. Citing *Smith v. Hardy*, 144 Ga. App. 168 (240 SE2d 714) (1977) and contending that whether Dunaway was speeding was a jury question, the Shillidays complain of the trial court's refusal to charge OCGA § 40-6-180.[4] *Hardy* is inapt. The charge given in *Hardy* was former Code Ann. § 68-1626 (a), which addressed speed in a narrower context than does the requested charge in this case.[5] The requested charge here was not adjusted to the evidence. The law is well established that "[a] request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence; it must not be argumentative or seek an expression of opinion on the part of the court; and it must not be so phrased as to have tendency to confuse and mislead the jury or to becloud the issues in the case." (Citations and punctuation omitted.) *Byrd v. Daus*, 218 Ga. App. 145, 148 (4) (460 SE2d 819) (1995). See also *Mattox v. MARTA*, 200 Ga. App. 697, 699 (4) (409 SE2d 267) (1991). The requested charge simply quoted the Code section and contained matters irrelevant to the evidence presented in this case. References to the approach to a curve, intersection, railroad grade crossing, and the approach and traversing of a hill crest were

---

[4] The section states: "No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. Consistently with the foregoing, every person shall drive at a reasonable and prudent speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching and traversing a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

[5] The former Code section stated: "No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." Ga. Code Ann. § 68-1626 (a), quoted in *Cottongim v. City of East Point*, 167 Ga. App. 21, 22 (306 SE2d 30) (1983). The Code section was repealed in 1975. Id.

not pertinent to the issues on trial here. The charge was overbroad and could well have confused the jury and "beclouded" the issues. Hence, the charge was inapt, and the trial court did not err in refusing to give it.

8. The Shillidays contend the trial court erroneously charged the jury on assumption of risk and sudden emergency. Trial counsel, however, never excepted to these charges. In fact, trial counsel for the Shillidays *suggested* that the pattern charge on assumption of risk be given. The Shillidays cannot now complain on appeal that the charge was erroneous. See Division 6, supra.

While OCGA § 5-5-24 (c) does provide that unobjected-to charges may be reviewed "where there has been a substantial error in the charge which was harmful as a matter of law," instances of reversal under this section "are likely to be very, very rare." *Nathan v. Duncan*, 113 Ga. App. 630, 638 (6) (149 SE2d 383) (1966). "Generally, if counsel, who are skilled and trained in the law and who have prepared and tried the case, fail to see the error and enter an exception as provided in subsections (a) and (b), it is not to be regarded as harmful." Id. A charge "harmful as a matter of law" is one that is "blatantly apparent and prejudicial to the extent that it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it, or a gross injustice is about to result or has resulted directly attributable to the alleged errors." (Citations and punctuation omitted.) *Central of Ga. R. Co. v. Luther*, 128 Ga. App. 178, 181 (1) (196 SE2d 149) (1973). We have reviewed the record, and even assuming the charges were erroneous, we cannot hold that the allegedly erroneous charges were so blatantly prejudicial as to deprive the Shillidays of a fair trial. In light of trial counsel's failure to except to these charges, the Shillidays' contentions are without merit.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED FEBRUARY 29, 1996 —

*Jacobs & Slawsky, David J. Worley*, for appellants.
*Ervin H. Gerson*, for appellee.