A98A0551. GOODMAN v. FROLIK AND COMPANY, INC. et al.

(504 SE2d 223)

SMITH, Judge.

This appeal concerns the construction of an exclusive real estate listing agreement and the claims of a real estate broker and agents for a commission under that agreement. After reviewing appellant James E. Goodman's numerous assertions of error, we find no error and affirm the trial court's directed verdict in favor of real estate broker Frolik and Company, Inc. and its two affiliated agents on the issue of breach of contract. We also affirm the trial court's decision to send to the jury the issue of expenses of litigation under OCGA § 13-6-11. Finally, we conclude that Goodman has demonstrated a consistent pattern of frivolous litigation for the purpose of delay and therefore grant appellees' motion for imposition of penalties under Rule 15 (b) of this Court.

Plaintiff/appellee Frolik and Company, Inc. d/b/a Re/Max In Town ("Re/Max") is a real estate broker, and appellees Kelly and Freeman are licensed real estate agents affiliated with Re/Max. On January 28, 1994, defendant/appellant Goodman signed an exclusive listing agreement with Re/Max to market a house he and his family were renovating for sale. The agreement provided for an exclusive listing from January 28, 1994 to April 30, 1994, with a six percent commission on any sale during that period. Goodman also agreed that the commission would be paid if, within 90 days of the termination of the agreement, the property was sold "to any person to whom the property had been submitted during the term of this agreement."

In early 1994, Guillermo and Judith Rivera, represented by two other Re/Max agents, were looking for a home in the Virginia-Highlands area. The Riveras drove by the Goodman property, saw the Re/Max sign, and attended an open house held by Kelly and Freeman. They later revisited the house with their agents. On March 20, 1994, the Riveras presented, in writing, a proposed real estate purchase contract on the property. Goodman made a counteroffer through the Riveras' agents, but the Riveras decided not to accept it and broke off negotiations at that time. On May 3, 1994, after the listing agreement expired, the Riveras presented the same purchase contract form, changed with correcting fluid. The revised contract resulted in the same net price "exactly to a penny" that Goodman would have received on the original price, less the commission. Goodman accepted the revised contract, and the closing took place on June

30, 1994. The 90-day extension period ended one month later, on July 30, 1994.

When Kelly and Freeman discovered that the property had been sold to the Riveras during the extension period, Kelly and an attorney for Re/Max sent letters to Goodman demanding the commission. When Goodman refused, plaintiffs brought this action seeking damages for breach of contract and expenses of litigation, including attorney fees, under OCGA § 13-6-11. After the close of the evidence at trial, the trial court denied defendant's motion for directed verdict and granted plaintiffs' motion for directed verdict on the issue of breach of contract and commission owed, but let the issue of attorney fees go to the jury. The jury returned a verdict in favor of plaintiffs for $10,729.26, the full amount requested. Goodman filed four separate motions for new trial and for j.n.o.v. These were denied, and he appeals.

1. Goodman's primary defense to Re/Max's claim is lack of notice. He contends he had never heard of the Riveras, never knew that they were interested in the property during the exclusive listing period, and never saw the first contract.[1] But whether Goodman received *notice* of the Riveras' offer is irrelevant under the clear terms of the listing agreement. "[E]ach contract by which one employs another to sell real estate must be construed according to its particular stipulations." *Howington v. Farm & Home Realty,* 148 Ga. App. 501, 504 (251 SE2d 591) (1978). This comports with the general rule that in construing contracts "the language used must be afforded its literal meaning and plain ordinary words given their usual significance. If the terms used are clear and unambiguous they are to be taken and understood in their plain, ordinary, and popular sense." (Citations and punctuation omitted.) *Twin Oaks Assoc. v. DeKalb Venture, Ltd.,* 190 Ga. App. 854, 855 (380 SE2d 469) (1989). "[T]he first rule that courts must apply when construing contracts, including real estate contracts, is to look to the plain meaning of the words of the contract." *Athens Wheel v. C & S Trust Co.,* 201 Ga. App. 779, 780 (1) (412 SE2d 278) (1991).

While Goodman claims the agreement is ambiguous, the language in question has been interpreted in several Georgia decisions. The term "submitted" includes showing a home to an individual "as a potential purchaser." *Lowe v. Hadley,* 193 Ga. App. 525 (388 SE2d

---

[1] This claim is hotly disputed by Re/Max, which presented testimony and evidence that Goodman received the first offer via fax at his own request, discussed it at length with Kelly over the telephone, then presented a counteroffer to the Riveras seeking more earnest money. Freeman testified that he was present during this conversation. The Riveras also testified that they received a counteroffer from the owner but decided not to continue the negotiations at that time.

394) (1989). See also *Ragsdale v. Smith*, 110 Ga. App. 485 (138 SE2d 916) (1964), interpreting similar language. At trial, Re/Max's broker testified that the language in question was part of Re/Max's standard listing agreement; based on her years of experience in real estate, "submitted" included, among many other things, showing the property to a potential prospect. This testimony was not controverted by Goodman. Moreover, the trial court rejected Goodman's contention that Re/Max was required to show its agents were the procuring cause of the sale, and Goodman does not appeal this ruling.

As for Goodman's contention that he was entitled to notice, this Court has held that virtually identical language in an exclusive listing agreement, without any mention of notice, would entitle the broker to a commission if the property was sold within the 90-day extension period. *Howington*, supra at 504.[2] Other cases have construed the same language with the addition of an express notice clause. See, e.g., *Boss & Bowen, Inc. v. Head Realty Co.*, 137 Ga. App. 553 (224 SE2d 459) (1976); *Kenney v. Clark*, 120 Ga. App. 16, 18 (2) (b) (169 SE2d 357) (1969).

The agreement at issue here, like that in *Howington*, did not contain the notice language included in the *Boss & Bowen* and *Kenney* agreements, and Goodman *acknowledged at trial* that the agreement did not provide for notice. He contended that it was his "understanding" that Re/Max would notify him but admitted that this was not in the written agreement and that he never asked for a clarification of the term or the notice he now contends he was entitled to receive. When a contract such as a real estate listing agreement is silent as to a purported obligation, parol evidence of an additional term or "understanding" is not admissible to add to or vary from the written contract: "[a]n additional obligation can not be grafted thereon by parol testimony." (Citations and punctuation omitted.) *Garcia v. Unique Realty &c.*, 205 Ga. App. 876, 879 (424 SE2d 14) (1992) (no obligation on realtor to investigate buyers' financial condition in absence of express provision in listing agreement). See also *Sherin v. Dept. of Human Resources*, 229 Ga. App. 621, 626 (5) (b) (494 SE2d 518) (1997) (alleged contractual duty to reveal information "was not incorporated into the agreement signed and is not a factor in interpreting the unambiguous language of the written contract. [Cits.]").

The Georgia cases relied upon by Goodman to show an implied duty of notice deal with non-exclusive or "open" listing agreements in which no commission is owed for buyers not obtained through the

---

[2] This Court found in favor of the seller in *Howington*, however, because no sale of the property took place within the 90-day extension period. Id. at 503-504.

efforts of the real estate agent. See, e.g., *Pate v. Milford A. Scott Real Estate Co.*, 132 Ga. App. 49 (207 SE2d 567) (1974). Goodman also cites decisions from Kentucky, Ohio, California, and New York providing for an implied obligation of notice. But these cases obviously are not binding in the face of *Howington*, approving the language used in this agreement, and *Garcia*, holding that implied obligations cannot be engrafted by parol onto a written real estate listing agreement. Goodman's contention that he was entitled to notice not provided for in the agreement is without merit.

2. Goodman also asserts that the trial court erred in denying his motion for directed verdict as to Kelly and Freeman. He contends they should not have been parties to this action because they are not third-party beneficiaries of the agreement. Both Kelly and Freeman signed the listing agreement, and the agreement itself expressly contemplates allocation of the commission.

We need not reach this contention, however, because Goodman did not raise it in a timely fashion below. The trial court correctly noted that Goodman never raised lack of standing as an issue in his pleadings. Further, this contention does not appear in the final pretrial order, which provides that no such motion is pending and does not enumerate it as a legal issue requiring special authorities. Goodman did not seek to amend the pretrial order; he did not raise the issue until the call of the case for trial. In the absence of a viable claim of surprise or unfairness, the trial court does not abuse its discretion in refusing to amend a pretrial order. *Mullinax v. Shaw*, 143 Ga. App. 657, 661 (239 SE2d 547) (1977). "The Code imposes a duty on each party to assist the trial court in formulating the pretrial order by defining the issues for trial, and deciding such other matters as may aid in the disposition of the action. This process is prescribed in the hope of promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone. . . . As noted by one federal court, if pretrial orders are to continue to serve their laudable purposes, courts and litigants must take them seriously. A final pretrial order should say what it means, and mean what it says." (Citations, footnotes, and punctuation omitted.) *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 318 (486 SE2d 851) (1997).

3. Goodman also enumerates as error the trial court's denial of his motion for directed verdict on the issue of misnomer. While this action was originally filed in the trade name "Re/Max In Town" under which Frolik and Company holds its real estate license, plaintiffs moved in September 1996 to correct the name to "Frolik and Company, Inc. d/b/a Re/Max In Town." Plaintiffs also filed an amended complaint on June 9, 1997, before entry of the pretrial order, correcting the name. Once again, the trial court noted that Goodman

never raised the issue of misnomer in his pleadings and did not respond to plaintiffs' motion. Plaintiffs were authorized to amend their complaint at any time before entry of the pretrial order to correct the misnomer. *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580 (2) (417 SE2d 383) (1992); *U. S. Xpress v. W. Timothy Askew & Co.*, 194 Ga. App. 730, 731 (391 SE2d 707) (1990).

4. Goodman contends the evidence was insufficient to submit to the jury the issue of expenses of litigation under OCGA § 13-6-11. As outlined above, however, the plain language of the agreement established Goodman's obligation to pay plaintiffs a commission, and the trial court correctly directed a verdict on the issue of his liability for the commission. Goodman's position challenging his clear obligations under the agreement is wholly without merit. At a minimum, this raised a jury issue as to whether no bona fide controversy or dispute existed and authorized a recovery for stubborn litigiousness or causing unnecessary trouble and expense. *King Industrial Realty v. Rich*, 224 Ga. App. 629, 635 (6) (481 SE2d 861) (1997). See also Division 6, below.

5. Finally, Goodman asserts the trial court erred in refusing to consider an affidavit he filed with his motion for new trial, arguing that it contains newly discovered evidence. But Goodman has made no effort to comply with the six well-established requirements to obtain a new trial on the ground of newly discovered evidence, including due diligence. See *Shilliday v. Dunaway*, 220 Ga. App. 406, 408 (2) (469 SE2d 485) (1996). He simply filed, separately from any of his four post-trial motions and without a cover pleading, an affidavit from a real estate broker testifying to the customs of the trade concerning notice to the property owner of prospective buyers. Goodman's original motion for new trial recited that "[t]here is newly discovered evidence . . . which could not have been earlier discovered by due diligence." But in his lengthy[3] supplemental brief in support of the motions we can find no mention of the affidavit. The affidavit itself does not provide any explanation for its untimely presentation. Moreover, it is obvious that the subject matter of the affidavit, dealing as it does with the customs of the Atlanta real estate trade over a period of 33 years, could have been discovered before trial. The trial court correctly struck the affidavit.

6. Plaintiffs have moved for frivolous appeal penalties. While Goodman asserts that "the proceedings to date in this case have violated due process and fundamental notions of basic fairness," the record in this case demonstrates otherwise. In addition to the con-

---

[3] In this 43-page brief, Goodman cites among other irrelevant items the Statute of Uses, 1536, 27 Hen. VIII, c. 10, and the Statute *Quia Emptores*, 1290, 18 Edw., c. 10.

duct already noted in this opinion, Goodman continued, even at trial, to contest matters that were not in dispute. For example, he denied in his opening statement that he had ever met Kelly or Freeman; on cross-examination, he admitted that he had met them but contended he had failed to recognize them in court. He only reluctantly admitted, after repeated questioning, that the Riveras signed a contract during the exclusive period. He also acknowledged that a commission would be owed for buyers who "seriously negotiated on the property" but denied that the Riveras did so.

Goodman's repeated protestations that he was an unsophisticated seller and uninvolved in the project are unsupported by the record. This property was not Goodman's residence, but an investment property bought for the purpose of renovation and sale. His daughter testified that the property was a "family project" and that her parents participated. It is apparent from Goodman's testimony as a whole that he is not a novice in the area of construction and sale of real property. In addition, as the owner of the property and party to the listing agreement, Goodman had an obligation to familiarize himself with the agreement's terms and ensure they were carried out.

Even more significantly, Goodman is a long-time member of the bar who represented himself pro se through the trial and his multiple motions for new trial. Although he testified that he is not a real estate attorney and his primary area of specialty is trial law, he also acknowledged that since his admission to the bar in 1968, his practice has always included contract work. As an attorney of 30 years' standing, Goodman knew or should have known that the "notice" argument forming the primary basis of his appeal is without merit under Georgia law, since it is contrary to the parol evidence rule and the plain language of the listing agreement that he signed. His belated attempts to challenge the standing of Kelly and Freeman and the misnomer of Re/Max were untimely, and he failed to include them in the pretrial order below. Goodman's "newly discovered evidence" argument is also without merit, and as an experienced trial lawyer, he was or should have been well aware of this. The failure to present these issues properly to the trial court was due in large part to Goodman's conduct while attempting to represent himself. He neglected to file necessary motions, failed to respond to others, and failed to include legal issues in the final pretrial order, although he nevertheless attempted to raise those issues on appeal.

In addition, Goodman persistently sought to delay the proceedings below. Appellees point out that Goodman requested two extensions of time to respond to their motion for summary judgment and also requested a continuance of the trial. As noted above, Goodman filed four motions for j.n.o.v. and for new trial. These attempts to

delay have continued on appeal; Goodman has requested extensions of filing deadlines on three separate occasions in this Court. He also attempted to avoid filing a supersedeas bond as ordered by the trial court, seeking to post a property bond with encumbered real estate.

Under these circumstances, it is apparent that Goodman's appeal is wholly without merit and was undertaken primarily if not entirely for purposes of delay. As a member of the bar, Goodman is or should be aware of the frivolity of this appeal even though he is no longer appearing pro se. Accordingly, we conclude this appeal is frivolous and impose a penalty of $1,000 against Goodman pursuant to Court of Appeals Rule 15 (b).

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 23, 1998 —
RECONSIDERATION DENIED JULY 13, 1998 — 

*Goodman & Bush, Norman L. Smith,* for appellant.
*James E. Goodman,* pro se.
*Smith, Gambrell & Russell, Marcia M. Ernst,* for appellees.