## A10A1494. NESBITT et al. v. WILDE et al.

(703 SE2d 389)

DOYLE, Judge.

Scott and Vicki Nesbitt, acting pro se, appeal from the grant of summary judgment to Keith Wilde and Wilde Construction, Inc. (collectively, "Wilde"), contending that the trial court erred by concluding that the Nesbitts cannot pursue claims arising from a construction dispute with Wilde because the Nesbitts are not the real parties in interest. For the reasons that follow, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that in July 2005, the Nesbitts entered into a contract with Wilde Construction, Inc., whereby Wilde Construction agreed to build a house for the Nesbitts by providing labor, materials, permitting, and work supervision. In return, the Nesbitts promised to pay Wilde Construction a weekly fee plus a percentage of the cost of construction. Construction began, but by January 2006, a dispute had arisen and Wilde Construction stopped its work on the house. It is undisputed that the Nesbitts later completed construction and obtained a certificate of occupancy without the involvement of Wilde Construction.

In June 2006, the Nesbitts executed a security deed for the property in favor of Option One Mortgage Corporation, securing repayment of a note evidencing a $208,000 loan to the Nesbitts. The security deed contained a provision stating that certain causes of action "in connection with or affecting the Property . . . are, at Lender's option, assigned to Lender. . . ."[2] In October 2006, the Nesbitts brought a cause of action against Wilde in the State Court of Douglas County, alleging claims for fraud, breach of contract, breach of warranty, negligent construction, violation of the Fair Business Practices Act, and unjust enrichment.

In June 2007, without resolution of the lawsuit against Wilde, the Nesbitts filed for bankruptcy protection in the United States Bankruptcy Court for the Northwestern District of Georgia, which action was converted to a Chapter 7 bankruptcy in June 2008. In

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] As used in this opinion, "Lender" refers to Option One and its successors.

September 2008, the bankruptcy court lifted the automatic stay to allow the Lender[3] to foreclose on the security deed, which the Lender did in January 2009, later selling the property to a third party.

In May 2009, the bankruptcy court entered a consent order authorizing the trustee to abandon the bankruptcy estate's claim to the Nesbitts' state court cause of action against Wilde, in exchange for the Nesbitts' payment to the estate of $35,000, which payment was made. After the Nesbitts resumed prosecution of their state court action, Wilde moved for summary judgment, arguing that the Nesbitts were no longer the real parties in interest. The state court granted the motion, giving rise to this appeal.

The Nesbitts contend that the trial court erred by concluding that they were not the real parties in interest because the cause of action on the construction contract was a separate asset not assigned to the Lender and because the foreclosure did not terminate their cause of action. We agree.

The essential question on appeal turns on the effect of the assignment in the security deed. "A deed is a contract. Contract interpretation is a matter of law for the court, unless an ambiguity remains in the contract after applying the rules of construction."[4]

The security deed provided as follows, in relevant part:

> All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, *at Lender's option, assigned to Lender*, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. *Lender may, at its option*, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may

---

[3] At this point, Option One had transferred its interests in the security deed and note to LaSalle Bank National Association.

[4] (Footnote omitted.) *Dept. of Transp. v. Meadow Trace*, 274 Ga. App. 267, 269 (1) (617 SE2d 246) (2005).

> make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and *as Lender shall request*.[5]

Based on this language, the trial court concluded that the Nesbitts "assigned all causes of action related to the Property to the Lender." Therefore, according to the trial court, upon foreclosure of the security deed, the Nesbitts were left with no rights to the property or to any causes of action related to the property.

This conclusion is based on the erroneous premise that the assignment was effectuated simply by executing the security deed. By the deed's own terms, "all [relevant] causes of action of the Borrower ... are, *at Lender's option*, assigned to Lender. . . ."[6] The assignment provision further states that the Lender may prosecute a claim in its own name or not, again, "at its option." When we construe a contract, "[i]f the terms used are clear and unambiguous they are to be taken and understood in their plain, ordinary, and popular sense."[7] Therefore, giving effect to the plain meaning of the deed's unambiguous language, we conclude that the Lender could, at its option, receive an assignment of a cause of action, but it was not required to simply by executing the security deed. Thus, any relevant cause of action remained with the Nesbitts until the Lender exercised its option to take the proceeds of a cause of action or prosecute the action in its own name.[8]

Based on our review of the record, the only measure taken by the Lender here was to foreclose on the security deed. Neither party points to any other step taken by the Lender manifesting an intent to exercise its option to prosecute a cause of action related to the property or take the resulting proceeds, if any. The tort or contract claims based on the construction contract here were separate from the real property rights associated with ownership of the constructed property, which is presumably why the assignment clause was written into the security deed. Therefore, foreclosure on the security deed did not transfer the cause of action to the Lender, and absent an assignment of the cause of action to the Lender, the Nesbitts' cause

---

[5] (Emphasis supplied.)

[6] (Emphasis supplied.) In light of our overall holding, we assume without deciding that the cause of action at issue is of the type that could be assigned in the security deed.

[7] (Punctuation omitted.) *Goodman v. Frolik & Co.*, 233 Ga. App. 376, 377 (1) (504 SE2d 223) (1998).

[8] See, e.g., *Burns v. Reves*, 217 Ga. App. 316, 317 (1) (457 SE2d 178) (1995) (option lost unless exercised as contemplated by option agreement); *Whitmire v. Colwell*, 159 Ga. App. 682, 683 (285 SE2d 28) (1981) (some action must be taken to manifest intent to exercise option).

of action based on the construction contract was never a part of the estate owned by the bank after it foreclosed on the security deed.

The bankruptcy proceeding did nothing to change the status of the cause of action other than to transfer it to the bankruptcy estate,[9] and when the bankruptcy trustee later abandoned the estate's claim, "the practical effect of abandonment is that the claim never left [the Nesbitts] in the first place."[10] Accordingly, the trial court erred by ruling that the Nesbitts were no longer the real party in interest to the cause of action arising from the construction contract.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

## DECIDED NOVEMBER 16, 2010.

Scott R. Nesbitt, *pro se.*
Vicki W. Nesbitt, *pro se.*
Tisinger Vance, Charles D. Mecklin, Jr., for appellees.

[9] See *Denis v. Delta Air Lines*, 248 Ga. App. 377, 379 (546 SE2d 805) (2001) ("a cause of action becomes part of the bankruptcy estate . . .").

[10] Id. at 380.