A94A1238. BYNUM et al. v. GREGORY et al.
(450 SE2d 840)

BLACKBURN, Judge.

This is an appeal by plaintiffs/appellants, Robert and Debra Bynum, individually, and as parents and next friend of their minor daughter, Shannon, from the grant of summary judgment to defendants/appellees, Dr. James R. Gregory, and Associates in Obstetrics & Gynecology, P. C. (Associates), in this medical malpractice action.

The record, construed most favorably for the Bynums, the non-movants, shows that medical services in connection with Mrs. Bynum's pregnancy and delivery were provided to her by Associates (operating at that time under its original name, Drs. Gregory, Wages and Eidson, P.C.), and that one of its employees and shareholders, Dr. Gregory, was the attending obstetrician at the delivery at 9:31 p.m. on February 20, 1975.

An external fetal heart monitor was employed at 5:30 p.m., February 20, 1975. Dr. Gregory was aware of the fact that for several hours prior to delivery Shannon was in distress having an irregular heartbeat, skipping one in four beats. Shannon also had fetal tachycardia (elevated heart rate of 200-300 bpm) which passed through the normal range of 120-160 bpm to a depressed heart rate level of 90 bpm at 8:45 p.m. until her birth at 9:31 p.m., February 20, 1975. Dr. Gregory acknowledged being aware that Shannon was in distress at 8:00 p.m., February 20, 1975. Shannon was meconium-stained at birth. Dr. Gregory acknowledges that the presence of meconium is consistent with Shannon's being in distress. *Dr. Gregory indicated* that the *nuchal cord*, hypoxia, and neonatal asphyxia *were possible causes of Shannon's depressed condition.*

Following delivery of Shannon, who had an initial Apgar score of one, by Dr. Gregory, Dr. William R. Tipton, a pediatrician and shareholder in Pediatrics of Dalton (a professional organization), examined Shannon and took over her care.

Dr. Tipton found Shannon was flaccid, not breathing, stained with meconium, in distress, and that her mother had a fever and foul smelling amniotic fluid. Dr. Tipton's initial impression of Shannon's condition was that she suffered from neonatal asphyxia (lack of oxygen) and he recorded this in her medical records on February 20, 1975, following her birth.

Dr. Tipton ordered cultures of Shannon's ear, umbilicus and stool, started antibiotics and performed two spinal taps because he suspected that Shannon had an infection. Within 36 hours of birth, tests ruled out spinal meningitis as a cause of Shannon's condition. Dr. Farrow, a pediatrician who was also a shareholder in Pediatrics of Dalton, confirmed Dr. Tipton's initial diagnosis and recorded Shannon's final diagnosis on March 13, 1975, which was: full-term female infant, brain injury due to anoxia (lack of oxygen) with convulsive seizures due to brain injury. Dr. Farrow testified that there was nothing in the pediatric entries on Shannon's medical records which would indicate a diagnosis of meningitis.

Notwithstanding the pediatric diagnosis on February 20, 1975, which did not change through Shannon's discharge on March 13, 1975, and was contained in the medical records, Dr. Eidson, a shareholder and employee of Associates, entered the following on the medical records on February 23, 1975, as the reason why Shannon was not going home with her mother, "septic meningitis and amnionitis of unknown causes leading to septic meningitis of infant."

At her six-week checkup, Mrs. Bynum inquired of Dr. Eidson as to the cause of Shannon's condition. Dr. Eidson affirmatively informed Mrs. Bynum that *they* (after a two-month study) had concluded Shannon had spinal meningitis and that it was something that happened to one in a million women and there was not anything that they could have done. Dr. Eidson did not refer Mrs. Bynum to the pediatricians or indicate any lack of knowledge of the subject, but rather, he affirmatively provided her with an erroneous response to her direct inquiry concerning Shannon's condition, which he knew or should have known was false. Dr. Eidson admits that he may have had a conversation with Mrs. Bynum at her six-week checkup concerning Shannon and meningitis.

Mrs. Bynum testified that she saw Dr. Gregory one time after the birth of Shannon, when he came into her room and she awoke. At that time he offered no explanation for Shannon's condition, and did not report Dr. Tipton's initial diagnosis. *He advised* Mrs. Bynum that Shannon had a *nuchal umbilical cord* which he removed from around

her throat, but that it *was not tight enough to hurt her*. However, after this suit was filed he deposed that it was one of the possible causes of Shannon's condition. Dr. Gregory does not deny this discussion with Mrs. Bynum, but does not recall it. Drs. Gregory and Eidson do not deny that they were aware of Shannon's condition and diagnosis at the time of their conversations with Mrs. Bynum.

Although Shannon was susceptible to colds and her growth and actions were abnormal, Mrs. Bynum did not inquire of the subsequent treating physicians as to the cause of her condition, as Dr. Eidson had already told her the origin of Shannon's problems and that she should expect abnormalities as Shannon grew. It was not until February 20, 1991, when Shannon needed emergency treatment, that Mrs. Bynum was informed by Dr. Pedersen that Shannon had never had spinal meningitis. Dr. Pedersen told Mrs. Bynum that whatever happened to her happened in the last few minutes before her birth. This was the first time Mrs. Bynum had been told by a medical doctor that Shannon's injuries did not result from spinal meningitis and that it resulted from events shortly before birth. Dr. Pedersen could not find the medical records at the hospital, and a brain scan was done.

On February 4, 1993, within two years of the discovery of the cause of Shannon's condition, this action was filed and the defendants were subsequently granted summary judgment. Plaintiffs enumerate as error, the ruling that their claims are barred, as a matter of law, by the statute of limitation, OCGA § 9-3-73 (b), and by the statute of repose, OCGA § 9-3-73 (c).

Defendants moved for summary judgment on the ground that the statute was not tolled and, even if a jury issue was raised in regard to the tolling of the statute of limitation, the complaint would nevertheless be barred by the five-year statute of ultimate repose for medical malpractice actions.

1. The threshold issue is whether the two-year statute of limitation for medical malpractice claims was tolled as a matter of law under the facts of this case. We find that a question of fact remains as to whether the failure of Associate's shareholder/employees to inform the plaintiffs of the etiology of Shannon's condition, or the alleged intentional misrepresentation to Mrs. Bynum that Shannon had septic meningitis, which was the cause of her problems and nothing could have been done about it, were sufficient to toll the statute of limitation.

Where the party upon whom the burden of proof at trial does not lie, makes a motion for summary judgment, all of the evidence adduced on said motion, including the testimony of the party opposing the motion, is construed most strongly against the movant. *Burnette Ford v. Hayes*, 227 Ga. 551 (181 SE2d 866) (1971), overruled on other

grounds. This is so, even as to issues upon which the opposing party would have the burden at trial. *Whisenhunt v. Allen Parker Co.*, 119 Ga. App. 813 (168 SE2d 827) (1969).

Drs. Gregory and Eidson were fellow shareholders and employees of Associates, Mrs. Bynum's health care provider, and she was entitled to rely upon the affirmative representations of such individuals as to the prenatal condition and etiology of Shannon's injury, and had no duty to investigate or confirm the truth or accuracy of such representations. Nothing in the record indicates that Mrs. Bynum otherwise became aware that Shannon did not have spinal meningitis until February 20, 1991. Mrs. Bynum claims that she failed to seek further diagnosis of Shannon's condition because her doctor told her the diagnosis and its etiology. *Hill v. Fordham*, 186 Ga. App. 354 (367 SE2d 128) (1988); *Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga. App. 770, 773-774 (278 SE2d 653) (1981).

2. Having determined that the statute of limitation, OCGA § 9-3-73 (b), was not, as a matter of law, tolled in this case, we next consider whether plaintiffs' action was barred by operation of the statute of ultimate repose for medical malpractice claims, OCGA § 9-3-73 (c). "[A] statute of ultimate repose cannot be 'tolled' to permit actions to be brought for injuries which did not occur until after the statutory period had expired. However, the statute of ultimate repose should not be applied to relieve a defendant of liability for injuries which occurred during the period of liability, but which were concealed from the [plaintiffs] by the [defendants'] own fraud. The statute of ultimate repose should not provide an incentive for a doctor or other medical professional to conceal [their] negligence with the assurance that after five years such fraudulent conduct will insulate [them] from liability. The sun never sets on fraud." *Hill*, supra at 357-358. "[W]e hold in this case that an issue of fraud remains for jury determination which, if found, would estop the defendant from raising the defense of the statute of ultimate repose." Id.

The alleged conduct of defendants and the shareholder/employee thereof, when viewed in a light most favorable to the non-movants, goes far beyond simple nondisclosure, as a jury would be authorized to conclude that they engaged in intentional, deliberate misrepresentation, or fraud, as opposed to only failing to reveal Shannon's condition. The trial court erred in granting summary judgment to defendants.

*Judgment reversed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 21, 1994 —
RECONSIDERATION DENIED DECEMBER 5, 1994 —

*Bird, Ballard & Still, William L. Ballard,* for appellants.
*Long, Weinberg, Ansley & Wheeler, Sidney F. Wheeler, Lance D. Lourie, J. Calhoun Harris, Jr.,* for appellees.