## A02A1832. MERCKER v. ABEND et al.
### (581 SE2d 351)

PHIPPS, Judge.

Dr. Melvin Abend performed laparoscopic surgery on Suzanne Estee Mercker to remove her gallbladder in treatment for gallstones. Because of persistent bile leakage thereafter, Mercker underwent multiple repair surgeries. She filed a medical malpractice suit against Abend and his professional corporation, Melvin N. Abend, M.D., P.C., alleging they were liable for permanent damage to her biliary system. A jury found in favor of the defendants. Mercker appeals, contending that the trial court erred in charging the jury. Because Mercker has demonstrated no reversible error, we affirm.

During a laparoscopic cholecystectomy on Mercker on August 4, 1998, Dr. Abend unintentionally perforated the cystic duct. Because bile began to leak from the hole, Abend realized what he had done. He testified that "[t]he cystic duct was transected in the process of the gallbladder removal at the level that the hole was." He left a bile drainage tube in the area of the cystic duct. Abend testified that he did so "[n]ot because of the perforation of the cystic duct per se," but "as part of the overall assessment," which included a coarse, thickened gallbladder, the difficulty of the dissection, and abdominal adhesions. Before discharging Mercker from the hospital on August

5, Abend assured her that the tube was there because there might be some leakage, but that it would heal within a few days.

But on August 11, Mercker reported to Abend that bile continued to leak. Tests performed the next day revealed blockage of the bile duct, but not the source of the leakage. On August 13, Abend performed open repair surgery and discovered that during the cholecystectomy, he had erroneously placed a clip on the common bile duct, cut the common hepatic duct, and cut an accessory duct. According to Abend, he corrected those errors during the repair surgery.

But Mercker continued to leak bile. Because of the unexplained leakage, on October 7, Abend referred Mercker to Dr. Charles Staley. In April 1999, Staley performed the same type of repair surgery on Mercker as had Abend. The leakage persisted, although at a reduced rate. After confirming in May that the leakage was stemming from a small branch of Mercker's right biliary system, Staley performed another surgery in July, which stopped the leakage, but removed half of Mercker's liver. According to Staley, the liver usually regenerates within six months to a year, but Mercker faces certain lifelong health risks and her liver function must be monitored at least annually for the rest of her life.

In her lawsuit, Mercker did not contend that the perforation of her cystic duct occurred as a result of negligence. Rather, she claimed that Abend could not adequately see what he was doing during the laparoscopic procedure and therefore was negligent in failing to convert to an open procedure and in failing to perform a cholangiogram, a procedure whereby dye is injected into the biliary system to assist a physician in identifying parts of the anatomy. She further alleged that not doing either led to him erroneously placing a clip on her common bile duct and cutting her common hepatic duct. Mercker also claimed that Abend was negligent in not referring her to another physician for the initial repair surgery.

At trial, Mercker presented medical expert testimony that if a surgeon, at any point while performing a laparoscopic cholecystectomy, is not completely sure of the patient's internal anatomy or encounters "any kind of leak, hole, injury to anything that [he is] not satisfied with, any bleeding that [he] can't control," the standard of care requires the surgeon to convert the procedure to an open one, whereby he can have a better view of and access to the internal anatomy.[1] Her medical expert, who had read Abend's deposition, opined that Abend had not been sure of what he had perforated during the

---

[1] Mercker asserts that her medical expert opined that if a surgeon encounters an "abnormal anatomy" or "injury to a bile duct," the surgeon should then end a laparoscopic gallbladder surgery and convert to an open procedure. But that assertion is unsupported by the portions of the record to which she cites.

surgery and therefore was negligent in not either converting to an open procedure or performing a cholangiogram. The expert testified that not doing either led to further acts of negligence: while intending to clip and cut the cystic duct, Abend erroneously placed a clip on the common bile duct and cut the common hepatic duct. Mercker's expert also opined that Abend was negligent in not referring Mercker to a specialist for the first repair surgery.

But Abend's medical expert, who had reviewed Mercker's medical records, the operative report, and Abend's deposition, testified that the standard of care did not require conversion to an open procedure because, in his opinion, Abend felt comfortable that he had identified the pertinent internal structures and was not confused about Mercker's anatomy. Abend's medical expert also testified that a cholangiogram subjects the patient to certain risks and should be done only if the physician believes that the patient has stones in the common bile duct. Because there was no indication of that condition, Abend's expert testified, the standard of care did not require Abend to perform a cholangiogram. He testified that in all of Abend's care of Mercker, Abend met the standard of care.

The assistant surgeon during Mercker's initial surgery, Dr. Arnold Rosen, testified that during the laparoscopy, he could see Mercker's anatomy and thought that Abend was properly clipping and cutting her cystic duct. He had not known that Abend had caused any problematic injury to Mercker. Rosen explained that the drainage tube had been left in Mercker because her gallbladder was "thickened" and, in dissecting it from the liver, there was "oozing from the liver bed," and those circumstances commonly lead to leaving a drain in case of blood collection or bile drainage from the liver bed. Rosen gave an explanation for why a cholangiogram had not been done. He testified that the standard of care did not require conversion to an open procedure and that Abend's performance was within the standard of care.

Abend testified that at the time of the surgery, he was "certain" of Mercker's anatomy. He stated, "[a]t the time of doing the laparoscopic chole[cystectomy], I had no hint that there was any complication occurring. Had there been, there would have been an open procedure." He stated that he had met the standard of care in treating Mercker.

1. Mercker contends that the trial court should not have charged the jury on hindsight. Over objection, the court charged:

[A] defendant cannot be found negligent on the basis of an assessment of a patient's condition which only later or in

hindsight proved to be correct [sic],[2] so long as the initial assessment was made in accordance with the reasonable standard of medical care. The concept of negligence does not encompass hindsight.

A hindsight charge instructs the jury "on the distinction between foresight and hindsight, the former of which is the basis for a negligence claim."[3] It instructs the jury that "an after-the-fact assessment of facts or evidence cannot be the basis of a negligence claim 'so long as the initial assessment was made in accordance with the reasonable standards of medical care.'"[4] In a medical malpractice case, a hindsight charge is authorized "where the evidence raises an issue as to whether the negligence claim is based on later acquired knowledge or information not known or reasonably available to the defendant physician at the time the medical care was rendered."[5]

In her appellate brief, Mercker argues that "[her] claims against [Abend] were not based upon later acquired knowledge or information not known or reasonably available." But jury charges are not limited to a plaintiff's characterization of the lawsuit. "A trial court has a duty to charge the jury on the law applicable to issues which are supported by the evidence. If there is even slight evidence on a specific issue, it is not error for the court to charge the jury on the law related to that issue."[6]

In *Horton v. Eaton*,[7] the plaintiff, who had suffered a fall, sued his radiologist, alleging that the radiologist's negligent failure to diagnose his neck fracture in an x-ray caused him to undergo inappropriate and injurious treatment by other physicians. But the evidence authorized a finding that the radiologist became aware of the plaintiff's precise complaints only *after* he had given his evaluation of the plaintiff's x-rays.[8] "[W]hat [the radiologist] knew or should have known at the time he examined [the plaintiff's] x-rays was hotly disputed."[9] Thus, the evidence authorized a hindsight charge.[10]

---

[2] Suggested language for the hindsight charge is "a defendant cannot be found negligent on the basis of an assessment of a patient's condition which only later, in hindsight, proves to be *incorrect*. . . ." (Emphasis supplied.) Suggested Pattern Jury Instructions, Vol. I: Civil Cases (3rd ed.), Part XXXII (CC). Mercker does not raise this issue.

[3] *Brannen v. Prince*, 204 Ga. App. 866, 871 (6) (421 SE2d 76) (1992); *Holbrook v. Fokes*, 195 Ga. App. 418 (393 SE2d 718) (1990).

[4] *Holbrook*, supra.

[5] (Punctuation and footnote omitted.) *Bethea v. Coralli*, 248 Ga. App. 853, 855 (2) (546 SE2d 542) (2001).

[6] (Citation and punctuation omitted.) *Jones v. Sperau*, 275 Ga. 213, 214 (2) (563 SE2d 863) (2002).

[7] 215 Ga. App. 803 (452 SE2d 541) (1994).

[8] Id. at 807 (4).

[9] Id.

[10] Id.

Similarly, what Abend knew or should have known at the time of the laparoscopic cholecystectomy was in dispute. While Mercker alleged that Abend knew or should have known then that either conversion to an open surgery or a cholangiogram was required, Abend's defense, which was supported by medical expert testimony, was that he lacked such knowledge at that time. He pointed out that it was not until several days after the laparoscopic surgery that it was discovered that he had erroneously clipped and cut certain ducts, the basis of Mercker's claims. Because the evidence raised an issue of whether Mercker's claims were based on later acquired knowledge or on information not known by Abend or reasonably available to him at the time of the initial surgery, the charge on hindsight was authorized.[11]

The cases of *McCoy v. Alvista Care Home*,[12] *McNabb v. Landis*,[13] and *Byrd v. Med. Center of Central Ga.*,[14] cited by Mercker, do not require a different result. While a hindsight charge was not authorized in those cases, they are distinguishable because the evidence showed that the plaintiffs' cases were based on information undisputedly either known by or available to the defendants at the time of the questioned incidents.

2. Mercker contends that the trial court's charge on hindsight was incomplete because it omitted, "[N]egligence consists in not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remotely and slightly possible." No party may complain of a jury charge unless he has timely objected to it on distinct grounds, absent a substantial error which was harmful as a matter of law.[15] Mercker did not object to the charge on the ground that it lacked this language, but now claims that the error was harmful as a matter of law. A charge "harmful as a matter of law" is one that is so blatantly apparent and prejudicial that it raises the question of whether the losing party has been deprived of a fair trial because of it, or a gross injustice has resulted that is directly attributable to the alleged error.[16]

To support her claim that the error was harmful as a matter of law, Mercker cites *McNabb v. Landis*,[17] wherein we found that omission of the language quoted above rendered a hindsight charge an

[11] See *Bethea*, supra (hindsight charge authorized where there was some evidence that plaintiff's claim was based on information acquired after allegedly negligent medical treatment was rendered); *Horton*, supra; *Haynes v. Hoffman*, 164 Ga. App. 236, 238 (3) (296 SE2d 216) (1982).

[12] 194 Ga. App. 599 (391 SE2d 419) (1990).

[13] 223 Ga. App. 894, 895 (1) (479 SE2d 194) (1996).

[14] 258 Ga. App. 286, 291-292 (3) (574 SE2d 326) (2002).

[15] OCGA § 5-5-24 (a); *Moody v. Dykes*, 269 Ga. 217, 219 (3) (496 SE2d 907) (1998).

[16] *Moody*, supra; *Shilliday v. Dunaway*, 220 Ga. App. 406, 411 (8) (469 SE2d 485) (1996).

[17] Supra.

incomplete statement of the law. But that case is silent on whether such an omission is harmful as a matter of law. The record here reveals that the court instructed the jury on the applicable standard of care. It charged that for a party to be held liable, it is not necessary that he should have been able to anticipate the particular consequences which ensued, but that it is sufficient "if in ordinary prudence he might have foreseen . . . injury would result from his act or omission." Having reviewed the record, including the entire jury charge, we hold that the omission of the cited language was not so blatantly apparent and prejudicial that it raises the question of whether Mercker was deprived of a fair trial. Nor did it result in a gross injustice.[18]

3. Mercker contends that the trial court erred in injecting the term "reasonable degree of medical certainty" into the charge on the standard of proof for proximate cause of injury. The court stated, "In a medical malpractice action, in order to prove the element of proximate cause, the plaintiff must show to a reasonable degree of medical certainty that the injury complained — strike that." Mercker cites *Thompson v. Zwiren*,[19] where we found reversible error on the grounds that a juror would understand that an instruction to decide proximate cause based upon "a reasonable degree of medical certainty" mandated a greater standard of proof than a mere preponderance of evidence within a reasonable degree of medical probability.[20] Subsequent to the filing of Mercker's briefs, however, the Supreme Court reversed *Thompson*, determining that the charge, as a whole, was complete and accurate and did not lead to confusion.[21]

At any rate, the record shows that Mercker's attorney initially objected. But when the court responded that it had not given the language "reasonable degree of medical certainty," that it had stricken any reference to it, counsel stated, "[W]e have no objection then, Your Honor, and I apologize for my error." Because counsel expressly acquiesced, any claim of this error on appellate review was waived.[22]

4. Mercker contends that the trial court erred in failing to give her requested charge that a patient is entitled to believe and to rely upon her doctor's affirmative representations, and that while under the doctor's care, a patient has no duty to investigate or confirm the truth or accuracy of the doctor's representations.

---

[18] See *Shilliday*, supra.

[19] 254 Ga. App. 204-206 (1) (561 SE2d 493) (2002) (physical precedent only), overruled, *Zwiren v. Thompson*, 276 Ga. 498 (578 SE2d 862) (2003).

[20] *Thompson v. Zwiren*, supra at 206.

[21] *Zwiren v. Thompson*, supra at 499.

[22] See *Moody*, supra at 219-220 (even the review of substantial error under OCGA § 5-5-24 (c) is not available when the giving of an instruction is specifically acquiesced in by counsel); *Shilliday*, supra at 410 (6).

The evidence Mercker cites in support of this contention is her testimony that after the initial surgery, Abend did not tell her that he had injured any bile duct or that she might consider seeing a specialist. Mercker then concludes that this evidence and the requested charge were "directly applicable to the issue of the failure of Dr. Abend to refer [her] to a specialist at a tertiary center for the repair of her common bile duct injury."

Mercker cites no authority for giving the charge when adjudicating such an issue. We enunciated the legal proposition that "[a patient] was entitled to rely upon the affirmative representations of [her health care providers] . . . and had no duty to investigate or confirm the truth or accuracy of such representations" in *Bynum v. Gregory.*[23] Because the issue in that medical malpractice case was whether the health care providers' alleged misrepresentations to the patient tolled the statute of limitation,[24] the patient's reliance on such statements presented a substantial, material, and controlling issue which could have affected the outcome of the claim. But in this case, Mercker has not demonstrated how her testimony presented any issue regarding whether Abend was negligent in not referring her to a specialist.

In further arguing on behalf of the requested charge, Mercker points to perceived inconsistencies between her testimony about the medical information Abend provided her and Abend's characterization at trial as having been truthful during his treatment of her. She claims that her own credibility was thus at issue, making the requested charge pertinent. But the record shows that the court adequately charged the jury on credibility. We find no error in the trial court's refusal to charge the jury as requested.

*Judgment affirmed. Adams, J., concurs. Ruffin, P. J., concurs and concurs specially. Barnes, J., not participating.*

RUFFIN, Presiding Judge, concurring and concurring specially.

I agree with everything said in the majority opinion, but write separately to emphasize that, as an appellate court, we are not called upon, nor authorized, to decide the ultimate issue of whether Dr. Abend was negligent in treating Suzanne Mercker. After reviewing the record, I cannot dispute that Mercker is suffering from truly distressing circumstances. At trial, both parties presented expert witnesses who gave conflicting testimony concerning whether the care rendered by Dr. Abend proximately caused her injuries. In light of that conflicting testimony, I agree with the majority that the trial court was required to instruct the jury on hindsight.

---

[23] 215 Ga. App. 431, 434 (1) (450 SE2d 840) (1994).
[24] Id.

Although our decisions on issues concerning jury charges and evidence may at times appear hyper-technical, I believe it is important for Mercker and the public to understand that the integrity of our jury trial system rests on such rulings. Ultimately, questions of negligence must be resolved by a jury if the evidence is conflicting, and both the trial and appellate courts strive to ensure that the jury's decision is based upon competent evidence and sound legal principles. This is an onerous task, especially in a case like this. But the trial court's rulings were legally correct, and we must, therefore, affirm.

DECIDED MARCH 28, 2003 —
RECONSIDERATION DENIED APRIL 11, 2003 — 

*Orr & Edwards, W. Fred Orr II, James G. Edwards II*, for appellant.
*Alston & Bird, Lori G. Baer, Jenifer N. Stephens*, for appellees.

