**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**June 29, 2012**

# In the Court of Appeals of Georgia

A12A0175. PRYCE v. RHODES et al.

BLACKWELL, Judge.

Shah-Haan Pryce filed a medical malpractice complaint in Cobb County against Dr. Tampa Rhodes and her professional corporation, Providence Family Dentistry (collectively "Dr. Rhodes"). Dr. Rhodes moved for judgment on the pleadings, and the trial court granted her motion after finding that Pryce failed to file his complaint within the two-year period of limitation for medical malpractice claims pursuant to OGCA § 9-3-71 (a). Pryce appeals, claiming that the court below should have found that the period of limitation was tolled because Dr. Rhodes concealed the cause of his injury. We find no error and affirm.

A motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment as a matter of law. *Sherman v. Fulton County Bd.*

*of Assessors*, 288 Ga. 88, 90 (701 SE2d 472) (2010). When we review the grant of a motion for judgment on the pleadings, we owe no deference to the decision of the court below. *Jenkins v. Wachovia Bank*, 314 Ga. App. 257 (724 SE2d 1) (2012). And, like the court below, we must accept the truth of the factual allegations contained in the pleadings of the nonmoving party, and we view the pleadings in the light most favorable to the nonmoving party. See *Ford v. Whipple*, 225 Ga. App. 276, 277 (483 SE2d 591) (1997).

So viewed, the pleadings show that Pryce visited Dr. Rhodes for routine fillings in January 2007. During the course of the procedure, Dr. Rhodes attempted to inject anesthetic into Pryce's right cheek. In doing so, the needle either "detached, or broke off at the hub," and it became lodged in Pryce's cheek. Dr. Rhodes immediately attempted to remove the needle,[1] but she was unsuccessful, and she referred Pryce to an oral surgeon. Later that day, Pryce went to the offices of the oral surgeon, who is identified in the record only as "Dr. Treadway." Dr. Treadway unsuccessfully attempted to remove the needle from Pryce's cheek, and he suggested that Pryce seek

---

[1] Given that Pryce claims that Dr. Rhodes caused the needle to break, it appears that it may have been a needle fragment that remained in Pryce's cheek. But Pryce refers to the foreign object as a "needle" — not a "needle fragment" — in his pleadings, and we will defer to the terminology used by Pryce.

2

a CT scan at Crawford Long Hospital. Some hours later, doctors at Crawford Long performed a CT scan, located the needle, and urged Pryce to have surgery to remove it. About a week later, Pryce underwent an "extensive," but unsuccessful, surgery at Cobb Wellstar Hospital, which caused him to remain hospitalized for four days.

In February of the same year, Pryce visited several doctors about the needle, and in June of that year, a CT scan showed that the needle was dangerously close to two of Pryce's major blood vessels. Two months later, in August 2007, doctors at Emory University Hospital, with the help of CT imaging, attempted to remove the needle, but they were ultimately unsuccessful. Pryce has been informed by doctors that he must undergo continued CT scans to ensure that the needle does not move any closer to his major blood vessels, and it appears from Pryce's complaint that the needle remains lodged in his cheek.

Pryce did not file suit until March 2010, which was more than three years after Dr. Rhodes allegedly caused the needle to break, and more than two years after Pryce attempted to have the needle removed at Cobb Wellstar and Emory. Pryce voluntarily dismissed his suit in June 2010, and he filed a renewal of the original complaint in December of the same year. Because Pryce became aware of his injury on the same date as the injury occurred, the period of limitation ordinarily would have begun to

run on that date. See OCGA § 9-3-71 (a); *Young v. Williams*, 274 Ga. 845, 848 (560 SE2d 690) (2002). But Pryce claims that Dr. Rhodes made fraudulent statements to him, in which she claimed that she did not do anything wrong to cause the needle to break. Pryce says that Dr. Rhodes knew that "she had used the wrong sized needle for the injection" and that she "exerted force on the needle[,] causing it to break." And Pryce asserts that, because Dr. Rhodes claimed not to have done anything wrong, he was deterred from bringing timely action, and his complaint is not barred by the two-year statute of limitation for medical malpractice actions. Indeed, OCGA § 9-3-96 provides that if a defendant's fraud debars or deters a plaintiff from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud.

Assuming that Dr. Rhodes's statements could be considered fraudulent,[2] the issue in this appeal is whether Pryce was thereby debarred or deterred from bringing timely suit. While Pryce asserts that Dr. Rhodes's statements deterred him from filing suit, his argument fails as a matter of law because, "[o]nce a plaintiff seeks the diagnosis or care of another doctor, she is no longer deterred from learning the true

---

[2] See *Pogue v. Goodman*, 282 Ga. App. 385, 389 (2) (638 SE2d 824) (2006) (fraud requires a knowing failure to reveal negligence).

4

facts by any conduct of a defendant even if the other doctor consulted does not diagnose the medical problem as arising from the defendant's improper treatment." *Bryant v. Crider*, 209 Ga. App. 623, 627 (434 SE2d 161) (1993) (citation and punctuation omitted); see also *Witherspoon v. Aranas*, 254 Ga. App. 609, 614 (2) (b) (562 SE2d 853) (2002) (overruled in part on other grounds by *Chandler v. Opensided MRI &c. LLC*, 299 Ga. App. 145, 157 (2) (b) (682 SE2d 165) (2009)). Pryce's own complaint affirmatively shows that he consulted at least two other physicians on the day his injury occurred. In addition, he received several other medical opinions and underwent numerous tests and procedures over the following months, each of which occurred more than two years before he brought his original action. Pryce's pleadings show that this is not a situation in which his injury was concealed or mysterious, but rather it is a case in which the nature of the injury was obvious from the inception of the alleged wrongful act by Dr. Rhodes, regardless of whether Pryce understood the extent to which Dr. Rhodes was at fault for that injury. Compare *Bynum v. Gregory*, 215 Ga. App. 431, 434 (1) (450 SE2d 840) (1994) (period of limitation not tolled as a matter of law where defendant's alleged fraud related to misdiagnosis of patient's condition, and plaintiff claims that she failed to seek further diagnosis of the condition specifically because the defendant had fraudulently "told her the diagnosis

5

and its etiology."). Here, Dr. Rhodes's assertion that she had not done anything wrong did not prevent Pryce from asking any of the doctors that treated him over the next several months about what might have caused the needle to break in his cheek. As a result, the period of limitation did not remain tolled as a result of the alleged fraudulent statements. Because Pryce's own pleadings reveal that he filed his original complaint after the expiration of the period of limitation, the court below properly granted Dr. Rhodes's motion for judgment on the pleadings. See *Braden v. Bell*, 222 Ga. App. 144 (473 SE2d 523) (1996).

*Judgment affirmed. Mikell, P. J., and Miller, J., concur.*