**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 5, 2021**

# In the Court of Appeals of Georgia

A20A2121. CAROLINE MAKI et al. v. REAL ESTATE EXPERT ADVISORS INC.

DILLARD, Presiding Judge.

Our adversarial system is premised on the idea that legal disputes are best resolved through the strategic battle waged by advocates representing their clients' best interests before a fair and impartial jury. But every so often, counsel for both parties neglect to provide the trial court with the information it needs to properly decide a case, and this failure—no matter how inadvertent—can sometimes result in a proceeding with a substantial error that is harmful as a matter of law. This is such a case.

Following a bifurcated jury trial, Caroline Maki and The Maki Group Real Estate Expert Advisors, LLC[1] were found liable for misappropriating the trade name of Real Estate Expert Advisors, Inc.[2] On appeal, Maki argues, *inter alia*, that the trial court erred by failing to instruct the jury on the "likelihood-of-confusion" analysis necessary to reach its verdict.[3] Because we agree with Maki, we reverse.

Viewed in the light most favorable to the jury's verdict,[4] the record shows that REEA is a real estate brokerage firm specializing in facilitating residential purchases

---

[1] For ease of reference, Caroline Maki and The Maki Group Real Estate Expert Advisors, LLC are collectively referred to as "Maki" throughout the opinion.

[2] For ease of reference, Real Estate Expert Advisors, Inc. will be referred to as "REEA" throughout the opinion.

[3] Maki separately argues that the trial court erred in failing to grant judgment notwithstanding the verdict because REEA's mark as applied to its services is generic and merely descriptive. Maki also contends that the court likewise erred in entering a judgment awarding actual damages against it for violating the Georgia Uniform Deceptive Trade Practices Act when that statute only permits injunctive relief. Finally, Maki maintains that the trial court erred in awarding REEA attorney fees and litigation expenses under OCGA § 13-6-11, as well as punitive damages. But we need not address any of these enumerations of error because Maki is entitled to a new trial.

[4] *See, e.g.*, *Bloom v. Camp*, 336 Ga. App. 891, 892 (1) (785 SE2d 573) (2016) ("The 'any evidence' standard of review applies to this argument, that is, we must affirm if there is any evidence to support the jury's verdict, and in making this determination, we must construe the evidence in the light most favorable to . . . the prevailing party.").

and sales. REEA has been in business and operating under the name of "Real Estate Expert Advisors" since 2014. And prior to REEA's use of this name, no other company, business, or individual used those four words in that exact order. Indeed, REEA spent millions of dollars to advertise and promote its name in the metro Atlanta area—including Gwinnett County—since 2014.

REEA learned that Maki was using "Real Estate Expert Advisors" in its advertising, and, shortly thereafter, sent a demand letter to Maki requesting that it immediately cease use of "Real Estate Expert Advisors." Maki refused to do so, and REEA filed suit against Maki, seeking a temporary and permanent injunction under the Georgia Uniform Deceptive Trade Practices Act, damages for misappropriation of a trade name, attorney fees and litigation expenses, and punitive damages. Maki counterclaimed against REEA, seeking damages as a result of REEA "willfully and recklessly ma[king] false representations to [the court] to perpetrate a fraud on [the court] with the goal of stifling legal competition in the real estate industry" and in violation of OCGA § 10-1-372 (a) (8).

A jury returned a verdict in favor of REEA, awarding attorney fees and damages and, following a second trial, punitive damages. Additionally, the jury ruled in REEA's favor on Maki's counterclaims. The trial court then issued judgment on

3

the jury's verdicts *and* issued the temporary injunction requested by REEA. Maki sought judgment notwithstanding the verdict, which the trial court summarily denied. This appeal follows.

1. Maki argues that the trial court erred by failing to instruct the jury on the likelihood-of-confusion analysis necessary to reach its verdict. More specifically, Maki contends that the trial court neglected to provide the jury with the seven-factor analysis that must be applied to claims brought under the Georgia Uniform Deceptive Trade Practices Act. We agree.

Maki asserts that the trial court was required to instruct the jury to determine the "likelihood of confusion" based upon the following seven factors:

> (1) the strength and distinctiveness of the plaintiff's mark; (2) the similarity of the marks; (3) the similarity of the products the marks represent; (4) the similarity of the parties' retail outlets and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) actual confusion.

Importantly, in *Ackerman Security Systems, Inc. v. Design Security Systems, Inc.*,[5] we noted that the "appropriate legal test" for claims brought under the Georgia Deceptive Trade Practices Act is the likelihood-of-confusion test, which requires the

---

[5] 201 Ga. App. 805 (412 SE2d 588) (1991).

4

examination of a number of elements, including those Maki asserts must be

considered.[6] And of these factors, federal courts have explained that "the type of mark

and the evidence of actual confusion are the most important."[7] But these seven factors

"are not exclusive," and each factor need not be considered in every case.[8]

Here, the trial court instructed the jury, in relevant part, as follows:

> A person engages in deceptive trade practice when, in the course
> of her business, vocation, or occupation, she passes off goods or
> services as those of another; causes likelihood of confusion or of

---

[6] *Id.* at 806 (1); *see ITT Corp. v. Xylem Grp., LLC*, 963 FSupp2d 1309, 1327 (6) (ND Ga. 2013) ("Whether confusion occurs under [the] Georgia Deceptive Trade Practices Act, [OCGA] § 10-1-372, requires the same 'likelihood of confusion' analysis found in trademark-infringement claims under the Lanham Act.").

[7] *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F3d 931, 935 (II) (11th Cir. 2010) (punctuation omitted); *accord Frehling Enters. v. Int'l Select Group, Inc.*, 192 F3d 1330, 1335 (III) (11th Cir. 1999); *Costa Farms, LLC v. Costa Tropicals & Flowers, Inc.*, 2013 WL 12092473, at *4 (III) (A) (2) (SD Fla. 2013); *see PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F3d 1159, 1165 (II) (11th Cir. 2019) ("Of these factors, the strength of the mark and actual confusion are the most probative.").

[8] *See PlayNation Play Sys., Inc.*, 924 F2d at 1169 (II) (D) ("These factors are not exclusive. Courts do not have to consider every factor in every case."); *Swatch Watch, S.A. v. Taxor, Inc.*, 785 F2d 956, 958 (A) (11th Cir. 1986) ("The court does not have to consider all of these factors in every case and in some cases, 'new' factors may merit consideration. The real question is whether the court's ultimate determination about the 'likelihood of confusion' was correct." (emphasis & punctuation omitted)).

5

misunderstanding as to the source, sponsorship, approval, or certification of goods or services; causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by another; or engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

In order to prevail in an action under the Georgia Uniform Deceptive Trade Practices Act, the plaintiff need not prove competition between the parties or actual confusion or misunderstanding.

So, Maki is correct that the trial court did not instruct the jury as to the seven likelihood-of-confusion factors.[9] But this does not end our inquiry.

Maki's requests to charge did not contain an instruction as to the likelihood-of-confusion analysis.[10] And it is undisputed that Maki issued no objection to the trial

---

[9] *Cf. John H. Harland Co. v. Clarke Checks, Inc.*, 711 F2d 966, 973 (III) (11th Cir. 1983) ("In this case, the district court properly instructed the jury on the factors it should consider in determining whether there was a likelihood of confusion . . . .").

[10] *See* OCGA § 5-5-24 (b) ("In all cases, at the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may present to the court written requests that it instruct the jury on the law as set forth therein. Copies of requests shall be given to opposing counsel for their consideration prior to the charge of the court. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury but shall instruct the jury after the arguments are completed. The trial judge shall file with the clerk all requests submitted to him, whether given in charge or not.").

court's instructions to the jury.[11] As a result, we review this assertion only for "substantial error" because, "[n]otwithstanding any other provision of [OCGA § 5-5-24], the appellate courts shall consider and review erroneous charges [when] there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not."[12]

---

[11] *See* OCGA § 5-5-24 (a) ("Except as otherwise provided in this Code section, in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. Objection need not be made with the particularity formerly required of assignments of error and need only be as reasonably definite as the circumstances will permit. This subsection shall not apply in criminal cases.").

[12] OCGA § 5-5-24 (c); *see Jones v. Forest Lake Village Homeowners Ass'n, Inc.*, 304 Ga. App. 495, 502 (3) (696 SE2d 453) (2010) ("Unless the failure to give a charge is harmful as a matter of law to the extent that a gross miscarriage of justice is about to result, the absence of a written request to charge is a waiver of the right to complain on appeal." (punctuation omitted)). Maki does not cite to or discuss OCGA § 5-5-24 (c), instead making only a blanket assertion that the trial court committed "plain error," which is the term used in OCGA § 17-8-58, applicable to *criminal* trials. *See* OCGA § 17-8-58 (b) ("Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section."); *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011) (explaining that OCGA § 17-8-58 (b) on "plain error" applies to criminal cases while OCGA § 5-5-24 (c) on "substantial error" applies to civil cases).

A charge constituting substantial error is one that is harmful as a matter of law—*i.e.*, "blatantly apparent and prejudicial to the extent . . . it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it, or a gross injustice is about to result or has resulted directly attributable to the alleged errors."[13] Suffice it to say, instances of reversal under OCGA § 5-5-24 (c) "are likely to be very, very rare."[14] Indeed, generally speaking, if counsel—who are skilled and trained in the law and who have prepared and tried the case—"fail to see the error and enter an exception as provided in subsections (a) and (b), it is not

---

[13] *Smith v. Norfolk S. R.R. Co.*, 337 Ga. App. 604, 612 (2) (788 SE2d 508) (2016) (punctuation omitted); *see Williams v. Kennedy*, 240 Ga. 163, 164 (2) (240 SE2d 51) (1977) ("The exception to the rule found in [OCGA § 5-5-24 (c)] . . . is inapplicable unless it appears that the error contended is 'blatantly apparent and prejudicial' and that a gross miscarriage of justice attributable to it is about to result." (punctuation & citations omitted)); *Mercker v. Abend*, 260 Ga. App. 836, 840 (2) (581 SE2d 351) (2003) ("A charge 'harmful as a matter of law' is one that is so blatantly apparent and prejudicial that it raises the question of whether the losing party has been deprived of a fair trial because of it, or a gross injustice has resulted that is directly attributable to the alleged error.").

[14] *Shilliday v. Dunaway*, 220 Ga. App. 406, 410 (8) (469 SE2d 485) (1996) (punctuation omitted); *accord Seabolt v. Cheesborough*, 127 Ga. App. 254, 260 (5) (193 SE2d 238) (1972); *Nathan v. Duncan*, 113 Ga. App. 630, 638 (6) (149 SE2d 383) (1966); *see Waller v. Rymer*, 293 Ga. App. 833, 836 (1) (668 SE2d 470) (2008) ("We have held that instances falling within the exception contemplated in subsection (c) are very rare, and should be applied, and appellate review performed, only when it appears that a gross injustice has resulted or will result from the alleged error." (punctuation omitted)).

to be regarded as harmful."[15] Nevertheless, it is the duty of the trial court, whether requested or not, to "give the jury appropriate instructions on every substantial and vital issue presented by the evidence, and on every theory of the case."[16]

Here, the instructions given by the trial court tracked the language of the relevant Code sections nearly verbatim.[17] But the "central inquiry" in an infringement case is "whether there is a 'likelihood of confusion' on the part of consumers between

---

[15] *Nathan*, 113 Ga. App. at 638 (6); *accord Central of Ga. R.R. Co. v. Luther*, 128 Ga. App. 178, 180 (1) (196 SE2d 149) (1973).

[16] *Almassud v. Mezquital*, 345 Ga. App. 456, 458 (1) (811 SE2d 110) (2018); *see Robinson v. State*, 278 Ga. 836, 838 (5) n.7 (607 SE2d 559) (2005) (citing with approval Davis & Shulman, Georgia Practice & Procedure, § 21-3, for the proposition that "[i]t is the duty of the court, whether requested or not, to give the jury appropriate instructions on every substantial and vital issue presented by the evidence, and on every theory of the case"); *Hill v. State*, 237 Ga. 523, 524 (3) (228 SE2d 898) (1976) ("It is, of course, the duty of the trial court, whether requested or not to give the jury appropriate instructions on every substantial issue in the case which is raised by the evidence[.]").

[17] *See* OCGA § 10-1-372 (a) (1), (2), (3), (12) ("A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: (1) Passes off goods or services as those of another; (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; . . . or (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."); OCGA § 10-1-372 (b) ("In order to prevail in an action under this part, a complainant need not prove competition between the parties or actual confusion or misunderstanding.").

9

the names and symbols used by the two parties,"[18] which is reflected by repeated reference to the "likelihood of confusion" in the statute itself.[19] And the extent to which two marks are confusingly similar *cannot* be assessed "without considering all seven factors to ensure that the determination is made in light of the totality of the circumstances."[20]

Thus, because of this clear mandate, the omission from the charge of the seven "likelihood of confusion" factors was so blatantly apparent and prejudicial that it raises the question of whether Maki was deprived of a fair trial.[21] The sole issue in

---

[18] *Corps Grp. v. Afterburner, Inc.*, 335 Ga. App. 138, 144 (1) (779 SE2d 383) (2015) (punctuation omitted).

[19] *See* OCGA § 10-1-372 (a) (2), (3), (12) (quoted *supra* in note 17).

[20] *Corps Grp.*, 335 Ga. App. at 145 (1) (punctuation omitted) (emphasis supplied); *accord Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of St. John of Jerusalem, Knights of Malta, the Ecumenical Order*, 702 F3d 1279, 1293 (III) (B) (11th Cir. 2012); *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F2d 1484, 1488 (II) (C) (11th Cir. 1987).

[21] *Cf. Ford Motor Co. v. Conley*, 294 Ga. 530, 541 (2) (757 SE2d 20) (2014) ("If the error alleged was not materially prejudicial—if the party was not thereby deprived of a fair trial—then there is no justification for requiring another trial of the same case."); *Mercker*, 260 Ga. App. 841 (2) ("Having reviewed the record, including the entire jury charge, we hold that the omission of the cited language was not so blatantly apparent and prejudicial that it raises the question of whether [appellant] was deprived of a fair trial.").

this case—whether there was a likelihood of confusion between the parties'
names—was erroneously presented because the instructions were incomplete, which
necessarily hampered the jury's deliberations.[22] This, in turn, hinders *our* analysis of
the jury's verdict.[23] Accordingly, although we are certainly troubled by the failure of

[22] *Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547) (1988) ("Reversals by reason of erroneous jury charges to which no exceptions are taken are generally those in which (1) 'there was an erroneous presentation of the sole issue for decision' or (2) 'it is of a kind which would have been likely to influence the jury either to find against the defendant or to return a larger verdict than it might have otherwise done' or (3) it is 'blatantly apparent and prejudicial to the extent that it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it' or (4) 'a gross injustice is about to result or has resulted directly attributable to the alleged errors.'" (citation & punctuation omitted)); *Brown v. Garrett*, 261 Ga. App. 823, 826 (1) (584 SE2d 48) (2003) (explaining that "substantial error" occurs when "(1) the sole issue for decision was erroneously presented; (2) the error was likely to influence the jury to find against the defendant or return a larger verdict; (3) the error was so blatantly apparent and prejudicial that it raises the question whether the losing party received a fair trial; or (4) a gross injustice resulted, directly attributable to the error").

[23] *See Corps. Grp.*, 335 Ga. App. at 145 (1) ("In performing our review of whether there exists a likelihood of consumer confusion in a trademark infringement case under the Lanham Act, this Court must consider and evaluate the evidence supporting each of the [seven] factors and consider the weight to be accorded to each of the factors under the totality of the circumstances."); *see also Sovereign Military Hospitaller*, 702 F3d at 1294 (III) (B) ("[W]hen a district court completely disregards the proper [seven-factor] analysis in making its determination of confusion, we may vacate its ruling and remand for consideration of the claim using the proper framework. " (punctuation omitted)); *Wesco Mfg.*, 833 F2d at 1489 (II) (C) ("[T]he district court completely disregarded the proper [seven-factor] analysis, and we are left with an insufficient basis for determining whether its finding that "Surfari" is not

11

trial counsel to request this additional instruction or otherwise notice its omission,[24]

we must reverse and order that a new trial be conducted because the error in this case

was harmful as a matter of law.[25]

---

confusingly similar to "Sun Fari" is clearly erroneous.").

[24] We can readily distinguish this case from the circumstances in *Moody v. Dykes*, 269 Ga. 217 (496 SE2d 907) (1998), which REEA repeatedly discusses and cites. In that case, our Supreme Court concluded that counsel induced the complained-of error or acquiesced in the instructions given by the trial court because the appellant challenged the inclusion of allegedly erroneous instructions, not the *omission* of a charge that, by all indications in the record, was never considered by any party or the court for inclusion in the instructions. *Id.* at 220 (3) ("These facts compel the conclusion that the [appellants] expressly acquiesced in both the court's instruction on worldly circumstances and in the jury's consideration of them." (footnotes omitted)); *see Irvin v. Oliver*, 223 Ga. 193, 196 (2) (154 SE2d 217) (1967) ("We construe [OCGA § 5-5-24 (c)] to refer only to the failure to make objection to the charge, and not to those instances where the giving of an instruction, or the failure to give an instruction, is induced by counsel for the complaining party during the course of the trial, or specifically acquiesced in by counsel. It is always the duty of counsel, as officers of the court, to aid the trial judge in presenting the issues to the jury, and it should never be their purpose to mislead the judge in any statement made in regard to the issues involved in the case, or the law."). *Cf. Daniels v. State*, 306 Ga. App. 577, 583 (3) (703 SE2d 41) (2010) (appellant waived issue of trial court's failure to charge the definition of "attempt" when appellant did not request the charge and actually opposed the State's request that the court define "attempt" and did not object when the State withdrew its request).

[25] *Cf. Am. Ass'n of Cab Cos., Inc. v. Parham*, 291 Ga. App. 33, 38 (3) (b) (661 SE2d 161) (2008) ("When an instruction imposes an erroneously high burden of proof on a civil plaintiff, thereby shifting that burden on a primary issue, a new trial is the only remedy, even if the plaintiff obtained a judgment at the previous trial. We conclude that the trial court's instruction imposing a 'clear and convincing' standard

2. Based on our decision in Division 1, we need not address Maki's remaining enumerations of error.

*Judgment reversed. Rickman, P. J., and Brown, J., concur*

---

of proof on [appellee's] civil RICO claims was erroneous and harmful as a matter of law." (footnotes omitted)); *Pendarvis Const. Corp. v. Cobb Cnty.-Marietta Water Auth.*, 239 Ga. App. 14, 17 (2) (520 SE2d 530) (1999) ("The error in this case was an error of law and it was prejudicial because it went to the primary issue in the case, the value of the property. The charge shifted the burden of proof on that issue, and the jury awarded only $426 more than the $5,400 sought by the [appellee], less than one-half of one percent of what [appellant] sought over and above that amount. Thus the charge may well have affected the outcome of the case and deprived [appellant] of a fair trial. The charge was not corrected by the charge as a whole. It was separated from the earlier charge giving the [appellee's] burden and it may have taken on an importance in the jurors' minds separate from the earlier charge.").