**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 18, 2013**

# In the Court of Appeals of Georgia

A13A0360. MACDOWELL v. GALLANT et al. DO-022

DOYLE, Presiding Judge.

Ursula MacDowell appeals from the grant of summary judgment to Dr. Steven M. Gallant and Steven M. Gallant, D.D.S., P.C., in her suit alleging dental malpractice. MacDowell argues that the trial court erred by ruling that she filed her action outside of the two-year statute of limitation. Specifically, she challenges the trial court's ruling that MacDowell's consultation with an oral surgeon working with Gallant ended the tolling caused by Gallant's fraudulent concealment of her cause of action. For the reasons that follow, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable

conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

Viewed under this standard, the record shows that MacDowell had a series of problems with her teeth. She initially sought help from at least two dentists and was referred by one to Dr. Laura Braswell. In February 2006, Braswell examined MacDowell and identified several problems with MacDowell's teeth. In February or March 2006, Braswell referred MacDowell to Gallant, a general practitioner with a specialty in prosthetics, and Dr. Mollie Winston, an oral surgeon, for treatment. Gallant and Winston are in different practices, and they each performed different aspects of MacDowell's dental treatment. Gallant created the treatment plan, including developing a surgery guide, taking bite models, and installing prostheses; Winston performed the extraction and implant surgeries.

Based on his examination of MacDowell, Gallant confirmed that she needed a full mouth prosthodontic reconstruction, and he developed a course of action that would involve several procedures over a year or more. Gallant prepared a letter outlining his goal of installing fixed implant prostheses and the associated costs.

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

MacDowell elected to embark on the plan, and based on Gallant's surgical guides, Winston extracted certain teeth and replaced them with implants. When Gallant later examined MacDowell, he determined that the implants were placed too deep, too close together, and at an incorrect orientation. By November 2006, a few weeks after Winston performed the implant procedure on MacDowell, Gallant had also consulted with another dentist, Dr. Hal Arnold, who confirmed Gallant's opinion that the implants were improperly placed and would create difficulties in executing the final plan for prostheses.

As of November 2006, the implants were still relatively new, and an option remained to remove them and potentially reconfigure them before they integrated into the bone. Gallant did not inform MacDowell of the improper implantation, and instead, exercising his own judgment, decided that "with what this woman has been through, it's enough," and he endeavored to work around the difficulties with the existing implants. He admits that he did not consult MacDowell in this decision.

Ultimately, MacDowell's prosthetics were misaligned and did not perform as desired. MacDowell complained to Gallant in February 2007 that her tongue overlapped her teeth such that she could not chew without biting her tongue. Gallant performed several adjustments, and in November 2007, Gallant sent MacDowell to

3

Winston for examination of MacDowell's tongue and mouth due to MacDowell's continued problems. Winston told MacDowell that her reconstruction process was taking too long, and after taking some measurements, Winston told MacDowell that her reconstruction was too narrow. Gallant continued to make several more adjustments over several more office visits in November 2007 through January 2008. Winston again saw MacDowell in January 2008, and discussed her problems.

In February 2008, Gallant referred MacDowell to Arnold for a second opinion, and Arnold examined her on February 13, 2008. Based on that examination, Arnold recommended that the reconstruction be redone. Gallant ultimately offered to "remake the case," but MacDowell declined and obtained care from Arnold and other dentists, requiring several additional painful and costly restorative procedures.

On January 26, 2010, MacDowell filed suit against Gallant and his practice, alleging claims for professional malpractice, breach of contract, battery, and negligence per se. Following discovery, the defendants moved for summary judgment on the ground that MacDowell filed her suit outside of the applicable two-year statute of limitation.[2] The trial court granted the motion, giving rise to this appeal.

---

[2] See OCGA §§ 9-3-33 (battery) and 9-3-71 (a) (medical malpractice).With respect to the breach of contract claim, "the medical malpractice statute of limitation applies to both tort and contract theories of liability when the claim calls into question

Generally, under OCGA § 9-3-71, "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." "In most cases of negligent treatment . . . , the statute of limitation for medical malpractice will begin running at the time of the treatment . . . . That is the time that the injury generally occurs."[3] With respect to Gallant, the latest date of alleged injury (which was immediately manifested by mouth alignment problems) was when MacDowell received her final prosthesis on November 2, 2007.

MacDowell did not file her complaint until January 2010, which is more than two years after her alleged injury, but she argues that the statute of limitation was tolled by Gallant's fraudulent failure to tell her of his opinion that the implants were improperly placed, particularly before they became integrated into the bone and much more difficult to remove. The trial court ruled that even if MacDowell can show fraud that would toll the statute of limitation, the tolling stopped when MacDowell, in the exercise of ordinary care, could have learned of the existence of her cause of action.

the conduct of a professional in his area of expertise." *Robinson v. Williamson*, 245 Ga. App. 17, 19 (1) (537 SE2d 159) (2000) (punctuation omitted).

[3] *McCord v. Lee*, 286 Ga. 179, 180 (684 SE2d 658) (2009).

The trial court relied on Georgia case law stating that, in the medical malpractice context, "[o]nce a plaintiff seeks the diagnosis or care of another doctor, she is no longer deterred from learning the true facts by any conduct of a defendant even if the other doctor consulted does not diagnose the medical problem as arising from the defendant's improper treatment."[4] Based on this, the trial court ruled that when MacDowell saw Winston to discuss the problems she was having after Gallant placed the prostheses, this was, in effect, seeking the diagnosis or care of another doctor. So as of the time MacDowell spoke to Winston about her problems in November 2007 or on January 8, 2008,[5] the trial court concluded that the tolling stopped because MacDowell learned (or could have learned) of the problems arising from Gallant's work. Based on those visits to Winston, the trial court ruled that MacDowell's January 26, 2010 complaint was filed outside of the statute of limitations.

---

[4] (Punctuation omitted.) *Witherspoon v. Aranas*, 254 Ga. App. 609, 614 (2) (b) (562 SE2d 853) (2002), overruled on other grounds by *Chandler v. Opensided MRI of Atlanta, LLC*, 299 Ga. App. 145, 157 (2) (b) (682 SE2d 156) (2009). See also *Pryce v. Rhodes*, 316 Ga. App. 523, 524-525 (729 SE2d 641) (2012) (assuming fraud and applying the rule in the dental context).

[5] The trial court referred to the January 2008 date, but the record reflects that MacDowell saw Winston in both November 2007 and on January 8, 2008. Neither date is within two years of the filing of MacDowell's complaint.

We conclude that the trial court erred by ruling that MacDowell's visits to Winston ended the tolling period. Winston was one of MacDowell's original treating physicians and was the very practitioner who allegedly placed the implants incorrectly.[6] Further, as a treating doctor, Winston was not in a position to provide a second opinion as to the procedures that she herself executed as a team with Gallant. Therefore, by consulting with Winston, MacDowell cannot be deemed to have sought an *independent* medical opinion such that she reasonably could have discovered her cause of action. The purpose of seeking a second opinion is to overcome the alleged fraud that deters the patient from discovering the true facts. In this case, Winston could not provide a second opinion as to the work that she and Gallant were performing together.[7] Accordingly, we conclude that the trial court erred by ruling otherwise.

*Judgment reversed. McFadden and Boggs, JJ., concur.*

---

[6]Before and during the litigation, she disputed that the implants were incorrectly placed.

[7] By contrast, MacDowell's February 13, 2008 consultation with Arnold, an independent dentist, was sufficient to stop any tolling due to fraud. Her January 2010 complaint was filed within two years of that date.