In the Supreme Court of Georgia

Decided: June 16, 2014

S13G1733.  GALLANT, et al. v. MacDOWELL.

BENHAM, Justice.

This is a case of alleged dental malpractice.  The trial court granted summary judgment to appellants Steven M. Gallant, D.D.S. and the professional corporation through which he practices.  The Court of Appeals reversed the trial court's grant of summary judgment[1] and this Court granted appellants' petition for a writ of certiorari, directing the parties to brief the following:

> Did the Court of Appeals err when it held that the statutory period [of limitation] was tolled even after the plaintiff consulted with a second dentist?  See *Witherspoon v. Aranas*, 254 Ga. App. 609, 614 (2) (b) (562 SE2d 853) (2002), overruled on other grounds by *Chandler v. Opensided MRI of Atlanta, LLC*, 299 Ga. App. 145, 157 (2) (b) (682 SE2d 165) (2009).

As set forth below, we affirm the Court of Appeals.

As more fully set forth in the Court of Appeals opinion, appellee Ursula MacDowell was referred by another dentist to both Dr. Gallant, a general practitioner with a specialty in prosthetics, and Mollie Ann Winston, D.D.S., an

[1] *MacDowell v. Gallant*, 323 Ga. App. 61 (744 SE2d 836) (2013).

oral surgeon, for them jointly to provide professional services necessary for a full mouth prosthodontic reconstruction.[2] These two dentists maintain separate practices and engage in different professional specialties, but the record reflects they worked together as a team to perform reconstructive dental services for MacDowell. Based upon a treatment plan devised by Dr. Gallant, Dr. Winston was to extract certain teeth and place implants into MacDowell's jaw which Dr. Gallant would utilize in the installation of dental prostheses. The record reflects that shortly after the first of several implant procedures, in August of 2006, Dr. Gallant determined that, in his opinion, the implants had been improperly placed in such a manner as to make the installation of prostheses difficult. In fact, he consulted with another dentist, Dr. Hal Arnold, who confirmed Dr. Gallant's opinion. At that time, the implants were new, and one treatment option was to have them removed and replaced before they integrated into the bone. Dr. Gallant, however, admits he did not inform MacDowell of his opinion or discuss the options for treatment with her. Instead, he exercised his own judgment that it would be best to work around the difficulties created by the implants and go forward with installing the prostheses, so as not to put the patient through the

---

[2] Id. at 62.

2

process of removing and replacing the implants, because she had been through "enough."

The prostheses were installed over a period of time, and the record reflects that upon Dr. Gallant's installation of the final permanent prosthesis, MacDowell commenced making numerous complaints about their fit and comfort and Dr. Gallant made many adjustments in response to these complaints. At one point, in November 2007, Dr. Gallant referred MacDowell to Dr. Winston again for examination of her mouth due to her continued problems. During that visit, Dr. Winston informed MacDowell that Dr. Gallant's reconstruction process was taking too long and that her reconstruction was too narrow, thereby causing the problems she was experiencing. Dr. Gallant continued to make adjustments, MacDowell continued to voice complaints, and she saw Dr. Winston again in January 2008, at which time Dr. Winston reiterated her opinion that the prostheses were not properly configured. Finally, Dr. Gallant referred MacDowell to Dr. Arnold for a second opinion. On February 13, 2008, Dr. Arnold examined MacDowell and commenced treating her by completely remaking the prostheses that had already been installed. Dr. Arnold testified he discussed with the patient the improper placement and angulations of the

implants.

MacDowell filed her complaint for professional malpractice and other claims against Dr. Gallant on January 26, 2010. Appellants filed a motion for summary judgment asserting that the suit was time-barred. In response, MacDowell argued that the statute of limitation was tolled by Dr. Gallant's alleged fraudulent concealment of his opinion that the implants had been improperly placed even though he continued to treat MacDowell and complete the restoration using these implants. She further asserted that she did not discover the problems with the implants, or Dr. Gallant's knowledge of those problems and how they would impact her treatment, until she consulted with Dr. Arnold on February 13, 2008, which was less than two years before she filed the complaint. Citing *Price v. Currie*, 260 Ga. App. 526 (580 SE2d 299) (2003), the trial court granted appellants' motion for summary judgment solely upon the finding that even if the statute of limitation was tolled by fraud, nevertheless as of the date MacDowell sought the care of Dr. Winston on January 8, 2008, complaining of the fit and comfort of the prostheses, MacDowell had thereby "consulted with another doctor," and was on notice of the tort so that the statute began to run. The Court of Appeals reversed the summary judgment order on the

4

ground that the visits to Dr. Winston did not end the tolling of the statute of limitation because "by consulting with Winston, MacDowell cannot be deemed to have sought an *independent* medical opinion such that she reasonably could have discovered her cause of action."[3] We agree.

Generally, an action for medical malpractice must be brought within two years after the date on which an injury arising from a negligent act or omission occurred. OCGA § 9-3-71. Pursuant to OCGA § 9-3-96, however, the period of limitation for filing an action against a defendant is tolled where the defendant is guilty of fraud by which the plaintiff is debarred or deterred from bringing the action, and the limitation period commences to run only from the time the plaintiff discovers the fraud. Georgia appellate courts have held that "[o]nce a plaintiff seeks the diagnosis or care of another doctor, she is no longer deterred from learning the true facts by any conduct of a defendant 'even if the other doctor consulted does not diagnose the medical problem as arising from the defendant's improper treatment.'" *Witherspoon v. Aranas*, 254 Ga. App. 609, 614 (2) (b) (562 SE2d 853) (2002), overruled on other grounds by *Chandler v. Opensided MRI of Atlanta, LLC*, 299 Ga. App. 145, 157 (2) (b) (682 SE2d 165)

---

[3] Id. at 64. (Emphasis in the original.)

5

(2009), citing *Bryant v. Crider*, 209 Ga. App. 623, 627 (434 SE2d 161) (1993).

Those cases in which consultation with another doctor was deemed to have triggered the end of the tolling of the statute of limitation for alleged fraud involve instances in which the other doctor consulted was one who was not previously associated with the plaintiff's care or the treatment that was allegedly negligently rendered.[4]

In this case, however, Drs. Winston and Gallant jointly treated MacDowell for her dental problems, with one doctor providing one part of the necessary dental services and the other doctor providing another part of those services. The record reflects the two doctors consulted with each other on the case throughout the course of treatment and each relied upon the other for the other doctor's portion of the work. Even though MacDowell saw Dr. Winston in November of 2007 and January of 2008 for the specific purpose of having her review the problems MacDowell was experiencing with the prostheses, Dr. Winston had treated MacDowell on numerous occasions, in conjunction with Dr. Gallant,

---

[4] See, e.g., *Price v. Currie*, supra; *Lorelli v. Sood*, 259 Ga. App. 166 (576 SE2d 565) (2002); *Knight v. Sturm*, 212 Ga. App. 391 (1), (2) (442 SE2d 255) (1994); *Padgett v. Klaus*, 201 Ga. App. 399 (1) (411 SE2d 126) (1991); *Cannon v. Smith*, 187 Ga. App. 434 (370 SE2d 529) (1988); *Shved v. Daly,* 174 Ga. App. 209 (329 SE2d 536) (1985); *Forgay v. Tucker*, 128 Ga. App. 497 (197 SE2d 492) (1973).

commencing in 2006. Dr. Winston was inextricably involved in the treatment MacDowell now claims was negligently rendered, even if MacDowell has sued only Dr. Gallant. As Dr. Winston, herself, placed the implants, consulting with Dr. Winston could not automatically be deemed to have placed MacDowell on notice of problems with the implants, or Dr. Gallant's opinion that MacDowell's complaints and the problems associated with the installation of the prostheses were caused by improper placement of the implants, but that he failed to disclose this to MacDowell.[5] It cannot be said that MacDowell was no longer deterred from learning the alleged true facts as a result of these visits to Dr. Winston.

We reject appellants' assertion that this holding improperly infringes upon the legislature's role by engrafting a new provision onto the statute of limitation.

---

[5] We note that appellants contended at oral argument that, even if MacDowell's consultations with Dr. Winston did not qualify as *constructive* notice of the alleged tort, in those discussions Dr. Winston provided MacDowell with *actual* notice of Dr. Gallant's alleged malpractice. It is true that the tolling of the statute of limitation resulting from fraudulent concealment of malpractice ends when the plaintiff discovers the concealed tort, which may result from actual notice of the malpractice from any source, including the original doctor or an associated doctor, as well as from the constructive notice that is deemed to occur when the plaintiff consults with an independent doctor. See *Bauer v. Weeks*, 267 Ga. App. 617, 619 (600 SE2d 700) (2004) ("The statute of limitation is only tolled until the fraud is discovered or by reasonable diligence should have been discovered."); *Stephen W. Brown Radiology Assocs. v. Gowers*, 157 Ga. App. 770, 774 (278 SE2d 653) 1981) ("The statute begins to run from the time the patient has knowledge, or through the exercise of ordinary care could have learned of the existence of the tort to him."). However, the trial court relied only on constructive notice in granting summary judgment to appellants, the Cout of Appeals did not address whether MacDowell received actual notice of Dr. Gallant's alleged malpractice from Dr. Winston, and the issue has not been fully briefed in this Court. We therefore leave the issue to be addressed on remand.

The tolling statute already provides that, where the defendant has engaged in fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation runs only from the plaintiff's discovery of such fraud. OCGA § 9-3-96. Those cases in which the appellate courts have held that the tolling of the period of limitation as a result of fraud ends at the point at which a plaintiff seeks the diagnosis of another doctor are based upon the rationale that, at such a point, the plaintiff is no longer deterred, by any conduct of the defendant, from learning the true facts. See, e.g., *Bryant v. Crider*, supra, 209 Ga. App. at 627. ("Once a plaintiff seeks the diagnosis or care of another doctor, she is no longer deterred from learning the true facts . . . ."). Where, as here, the doctor consulted is one who has provided professional services to the plaintiff jointly with the defendant, that rationale does not apply. The judgment of the Court of Appeals is affirmed. We note, however, that other grounds for summary judgment remain to be addressed by the trial court upon remand.[6]

Judgment affirmed    All the Justices concur.

---

[6] The trial court has not yet found that fraud is actually present in this case so as to toll the statute of limitation. It simply found that even if fraud existed and the statute was tolled, the period would run again so as to time bar the claims asserted. The question of whether fraud exits, therefore, remains undetermined.

8