**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 1, 2018**

# In the Court of Appeals of Georgia

A17A1864. MACDOWELL v. GALLANT et al.

BARNES, Presiding Judge.

Ursula MacDowell filed a complaint alleging dental malpractice, and, upon concluding that MacDowell's complaint had been filed outside the statute of limitations, the trial court granted summary judgment to Steven M. Gallant, D.D.S. and Steven M. Gallant, D.D.S., P.C., the professional corporation through which he practices. In *MacDowell v. Gallant*, 323 Ga. App. 61 (744 SE2d 836) (2013), this Court reversed the trial court's grant of summary judgment to Dr. Gallant and thereafter, the Supreme Court of Georgia granted his petition for a writ of certiorari, directing the parties to brief whether this Court "err[ed] when it held that the statutory period of limitation was tolled even after the plaintiff consulted with a second dentist." (Punctuation omitted.) *Gallant v. MacDowell*, 295 Ga. 329, 329 (759 SE2d 818) (2014). In affirming this Court, the Supreme Court concluded that

> [t]he tolling statute already provides that, where the defendant has engaged in fraud by which the plaintiff has been debarred or deterred from

bringing an action, the period of limitation runs only from the plaintiff's discovery of such fraud. OCGA § 9-3-96. Those cases in which the appellate courts have held that the tolling of the period of limitation as a result of fraud ends at the point at which a plaintiff seeks the diagnosis of another doctor are based upon the rationale that, at such a point, the plaintiff is no longer deterred, by any conduct of the defendant, from learning the true facts. . . . Where, as here, the doctor consulted is one who has provided professional services to the plaintiff jointly with the defendant, that rationale does not apply.

(Citations and punctuation omitted.) Id. at 332-333.[1]

---

[1] This Court had held

that the trial court erred by ruling that MacDowell's visits to Winston ended the tolling period. Winston was one of MacDowell's original treating physicians and was the very practitioner who allegedly placed the implants incorrectly. Further, as a treating doctor, Winston was not in a position to provide a second opinion as to the procedures that she herself executed as a team with Gallant. Therefore, by consulting with Winston, MacDowell cannot be deemed to have sought an independent medical opinion such that she reasonably could have discovered her cause of action. The purpose of seeking a second opinion is to overcome the alleged fraud that deters the patient from discovering the true facts. In this case, Winston could not provide a second opinion as to the work that she and Gallant were performing together. Accordingly, we conclude that the trial court erred by ruling otherwise.

(Footnotes and emphasis omitted.) *MacDowell*, 323 Ga. App. at 64.

The Supreme Court noted "that other grounds for summary judgment remain to be addressed by the trial court on remand." *Gallant*, 295 Ga. at 333. It further noted that the trial court had relied only on constructive notice in granting summary judgment to appellants, and left the issue of "whether MacDowell received actual notice of Dr. Gallant's alleged malpractice from Dr. Winston . . . to be addressed on remand." Id. at 332 n. 5. Additionally, the Supreme Court noted that,

> [t]he trial court has not yet found that fraud is actually present in this case so as to toll the statute of limitation. It simply found that even if fraud existed and the statute was tolled, the period would run again so as to time bar the claims asserted. The question of whether fraud exists, therefore, remains undetermined.

*Gallant*, 295 Ga. at 333 n. 6.

Upon remand, the trial court entered an order directing the parties to file briefs addressing the issues of actual notice and the existence of fraud in relation to the tolling of the statute of limitation. Subsequently, the trial court entered a final order again granting summary judgment to Dr. Gallant, and again finding that MacDowell's claims were filed outside the two-year statute of limitations. The trial court determined that, although there was actual fraud by Dr. Gallant so as to toll the statute of limitations, MacDowell's had actual notice of the malpractice during her consultations with Dr.

3

Winston in November 2007 "or at the latest January 8, 2008," which commenced the running of the statute of limitations.

On appeal, MacDowell contends that the trial court erred in granting Dr. Gallant's motion for summary judgment. She asserts that, as the trial court held, Dr. Gallant's fraud tolled the running of the statute of limitations, but maintains that, contrary to the trial court's conclusion, MacDowell's visits to Dr. Winston, who was involved in the treatment, did not stop the tolling of the limitations period. According to MacDowell, the Supreme Court in *Gallant*, specifically held that the visits to Dr. Winston did not "as a matter of law, serve to place [her] on notice" about the problems with the implants. For the reasons discussed below, we reverse the order of the trial court granting summary judgment to Dr. Gallant.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal of a grant of summary judgment, this Court reviews the evidence de novo to determine whether a genuine issue of material fact exists or whether the movant is entitled to judgment as a matter of law.

(Citations and punctuation omitted.) *Boggs v. Bosley Medical Institute*, 228 Ga. App. 598, 599 (492 SE2d 264) (1997).

The facts, construed in favor of MacDowell as nonmovant, as set forth in *MacDowell*, 323 Ga. App. at 62-63, establish

> that MacDowell had a series of problems with her teeth. She initially sought help from at least two dentists and was referred by one to Dr. Laura Braswell. In February 2006, Braswell examined MacDowell and identified several problems with MacDowell's teeth. In February or March 2006, Braswell referred MacDowell to Gallant, a general practitioner with a specialty in prosthetics, and Dr. Mollie Winston, an oral surgeon, for treatment. Gallant and Winston are in different practices, and they each performed different aspects of MacDowell's dental treatment. Gallant created the treatment plan, including developing a surgery guide, taking bite models, and installing prostheses; Winston performed the extraction and implant surgeries.
>
> Based on his examination of MacDowell, Gallant confirmed that she needed a full mouth prosthodontic reconstruction, and he developed a course of action that would involve several procedures over a year or more. Gallant prepared a letter outlining his goal of installing fixed implant prostheses and the associated costs. MacDowell elected to embark on the plan, and based on Gallant's surgical guides, Winston extracted certain teeth and replaced them with implants. When Gallant later examined MacDowell, he determined that the implants were placed too deep, too close together, and at an incorrect orientation. By November 2006, a few weeks after Winston performed the implant procedure on MacDowell, Gallant had also consulted with another dentist, Dr. Hal Arnold, who confirmed Gallant's opinion that the implants were

5

improperly placed and would create difficulties in executing the final plan for prostheses.

As of November 2006, the implants were still relatively new, and an option remained to remove them and potentially reconfigure them before they integrated into the bone. Gallant did not inform MacDowell of the improper implantation, and instead, exercising his own judgment, decided that "with what this woman has been through, it's enough," and he endeavored to work around the difficulties with the existing implants. He admits that he did not consult MacDowell in this decision.

Ultimately, MacDowell's prosthetics were misaligned and did not perform as desired. MacDowell complained to Gallant in February 2007 that her tongue overlapped her teeth such that she could not chew without biting her tongue. Gallant performed several adjustments, and in November 2007, Gallant sent MacDowell to Winston for examination of MacDowell's tongue and mouth due to MacDowell's continued problems. Winston told MacDowell that her reconstruction process was taking too long, and after taking some measurements, Winston told MacDowell that her reconstruction was too narrow. Gallant continued to make several more adjustments over several more office visits in November 2007 through January 2008. Winston again saw MacDowell in January 2008, and discussed her problems.

In February 2008, Gallant referred MacDowell to Arnold for a second opinion, and Arnold examined her on February 13, 2008. Based on that examination, Arnold recommended that the reconstruction be redone. Gallant ultimately offered to "remake the case," but MacDowell declined

6

and obtained care from Arnold and other dentists, requiring several additional painful and costly restorative procedures.

On January 26, 2010, MacDowell filed suit against Gallant and his practice, alleging claims for professional malpractice, breach of contract, battery, and negligence per se.

*MacDowell*, 323 Ga. App. at 62-63.

Generally, an action for medical malpractice must be brought within two years after the date on which an injury arising from a negligent act or omission occurred. OCGA § 9-3-7 (a)1. Pursuant to OCGA § 9-3-96, however, this period of limitation for filing an action against a defendant is tolled where the defendant is guilty of fraud.

If the defendant is guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud. The confidential relationship between doctor and patient creates a duty to inform the patient of his or her condition. Failure to fulfill this duty would constitute fraud, which would toll the statute of limitation."

(Citation and punctuation omitted.) *Boggs*, 228 Ga. App. at 601 (1) (b). See *Zechmann v. Thigpen*, 210 Ga. App. 726, 730 (5) (437 SE2d 475) (1993) (there must be evidence that each health care provider intentionally withheld information as to the wrongful conduct in order to toll the statute of limitation); *Hill v. Fordham*, 186 Ga. App. 354,

7

355 (1) (367 SE2d 128) (1988) (where confidential relationship exists between physician or dentist and patient, the patient has the right to rely upon what her physician or dentist tells her, and an intentional failure to disclose will toll the statute if the intent to conceal or to remain silent is shown); *Leagan v. Levine*, 158 Ga. App. 293, 293 (1) (279 SE2d 741) (1981) ("In cases involving a relation of trust and confidence, such as a physician and patient, silence on the part of the physician when he should speak, or his failure to disclose what he ought to disclose" constitutes fraud. ).

Here, we agree that there was evidence that Dr. Gallant did not inform MacDowell that her implants were improperly placed or that the placement of the implants would result in further complications during the ensuing reconstruction process. The record reflects that, although MacDowell visited Dr. Gallant multiple times for various procedures, followup appointments and consultations after Dr. Winston's implants, he never informed MacDowell that he was concerned that the implants were improperly placed, that they should be redone, or that they would impede the reconstruction. In her deposition testimony, Dr. Winston recalled that she and Dr. Gallant had consulted about the implant placements, that she disagreed with his assessment that the implants were misplaced, and that "every time that [MacDowell] voiced concerns . . . she would relay that to Dr. Gallant."

8

Dr. Gallant testified that he did not tell MacDowell about the failed implants and reconstruction because he "made a decision that I felt was in [MacDowell's] best interest [which] was to use the implants[.]" He agreed that MacDowell was "entitled to know this information and her treatment options," and that he had "withheld information from her" that would have aided MacDowell in making "a fully informed decision" about her treatment. Accordingly, the trial court did not err in finding that Dr. Gallant's fraudulent concealment tolled the two-year statute of limitations for medical malpractice.

The trial court subsequently found that Dr. Gallant was nonetheless entitled to summary judgment because MacDowell had actual notice of the reconstruction issues.[2]

[2] In *Gallant,* the Supreme Court noted that
[Gallant] contended at oral argument that, even if MacDowell's consultations with Dr. Winston did not qualify as *constructive* notice of the alleged tort, in those discussions Dr. Winston provided MacDowell with *actual* notice of Dr. Gallant's alleged malpractice. It is true that the tolling of the statute of limitation resulting from fraudulent concealment of malpractice ends when the plaintiff discovers the concealed tort, which may result from actual notice of the malpractice from any source, including the original doctor or an associated doctor, as well as from the constructive notice that is deemed to occur when the plaintiff consults with an independent doctor.

9

It acknowledged that, in accordance with *Gallant,* MacDowell's visits with Dr. Winston, a co-treating doctor, could not be relied upon to place MacDowell on constructive notice of the problems. But, according to the trial court, by the time of MacDowell's last visit with Dr. Winston in January of 2008, she "plainly had knowledge that something was amiss," quoting *Bauer v. Weeks*, 267 Ga. App. 617, 620 (600 SE2d 700) (2004), because Dr. Winston told her that the "reconstruction process was taking too long and that her reconstruction was too narrow." The trial court concluded that Dr. Winston's concerns were actual notice that Dr. Gallant had performed the dental work improperly, and that knowledge commenced the running of the statute of limitations because "it was sufficient to put [Ms, MacDowell] on notice so that by the exercise of due diligence [she] could have discovered fraudulent concealment by Dr. Gallant of the malpractice." These visits were more than two years before the January 26, 2010 filing of the present action, and the trial court subsequently held that Dr. Gallant was entitled to summary judgment on all claims.[3]

(Emphasis in original.) *Gallant*, 295 Ga. at 332 n. 5.

[3] The trial court also found that MacDowell's claim for breach of contract was time-barred because based on the claim for medical malpractice and thus subject to the same two-year statute of limitations, and that the battery claim, with its two-year statute of limitations commencing "after the right of action accrues," also arose from Dr.

10

The trial court's reliance on *Bauer* is misplaced. In that case, although this Court held that the homeowner's knowledge that "something was amiss" was sufficient to put him on notice "so that by the exercise of due diligence [he] should have discovered the alleged fraud," *Bauer*, 267 Ga. App. at 620, the homeowner had sought assistance from an "independent handyman," to make repairs and was not relying on information from the fraudulent actor. Id. The statute of limitations was tolled by fraud, but then commenced with the constructive notice from the independent repairman. Id. See *MacDowell, 323 Ga. App.* at 64 ("by consulting with Winston, MacDowell cannot be deemed to have sought an independent medical opinion such that she reasonably could have discovered her cause of action[.]")

In this case, however, MacDowell was being seen by Dr. Gallant, her treating doctor, and Dr. Winston, a co-treating physician. Thus, although the tolling of the period of limitation as a result of fraud ends when MacDowell sought the diagnosis of another doctor,"[w]here, as here, the doctor consulted is one who has provided professional services to the plaintiff jointly with the defendant, that rationale does not

Gallant's professional negligence and thus was also time-barred.

11

apply," unless "MacDowell received actual notice of Dr. Gallant's alleged malpractice from Dr. Winston." Id. at 332, 332 n. 5.

The trial court held that, "at the very least, by November 2007 [when Dr. Gallant referred MacDowell back to Winston for the first follow-up] MacDowell was obligated to exercise 'ordinary care' to learn of 'the existence of the tort to [her],' and the statute of limitation began to run from that time." This is true only if, at that time, Dr. Winston provided MacDowell with actual notice that the reconstruction was improperly done. *Gallant*, 295 Ga. at 332 n. 5. Although MacDowell said that in November of 2007 Dr. Winston told her that the reconstruction was taking too long and that it was too narrow, MacDowell also said that prior to that time, Dr. Winston had not "conveyed to [her] any type of concern about Dr. Gallant or his abilities to do the work that he had agreed to do."

According to Dr. Winston, "The only thing I specifically remember [about the concerns MacDowell had about the care she was receiving from Dr. Gallant] is that she felt that she was mistreated physically there, that he hurt her," so if MacDowell was seeing both doctors for a procedure, she preferred Dr. Winston to "numb her before she went [to see Dr. Gallant]." Further, MacDowell complained to Dr. Winston that she was unhappy with "Dr. Gallant's technique and how rough he was with her." Dr. Winston

12

said that when MacDowell had voiced concerns about the "actual work [Dr. Gallant] was doing," she would relay the concerns to Dr. Gallant. However, Dr. Winston said that she did "not recall" having any discussion with MacDowell about seeing someone else for the reconstruction. She further did not recall "a time that she felt that Dr. Gallant was not attempting to accommodate [MacDowell] . . . with aesthetics or the way something fit." According to Dr. Winston, she "thought he was trying."

The crucial rule of summary judgment procedure is that a trial court cannot resolve facts or reconcile issues but can only ascertain if a material factual issue remains in dispute. (Citation omitted.) *R.D. Stallion Carpets, Inc. v. Dorsett Indus., L.P.*, 244 Ga. App. 719, 725 (536 SE2d 523) (2000). In this case, material issues of fact remain as to whether the interactions between Dr. Winston and MacDowell were such that MacDowell acquired actual notice of Dr. Gallant's malpractice and thus, commenced the running of the statute of limitations.

Accordingly, the trial court erred in granting summary judgment to Dr. Gallant.

*Judgment reversed. McMillian and Mercier, JJ., concur.*